STATE OF NORTH CAROLINA v. ENDY RAFAEL LOPEZ

No. COA11-957

(Filed 21 February 2012)

## 1. Search and Seizure—motion to suppress—traffic stop—reasonable suspicion—voluntary consent

The trial court did not err in a trafficking in cocaine by possession and transportation case by denying defendant's motion to suppress the evidence. An officer had reasonable suspicion to search defendant's vehicle based solely upon what he observed during a traffic stop after defendant was lawfully stopped for speeding. Defendant voluntarily gave his consent to a search of the entire vehicle, which included under the hood and in the air filter compartment of the vehicle.

## 2. Drugs—cocaine trafficking—motion to dismiss—knowing possession or transportation—driving vehicle

The trial court did not err by denying defendant's motion to dismiss the cocaine trafficking charges based on alleged insufficient evidence to show that defendant knowingly possessed or transported cocaine. The evidence that defendant was driving the vehicle which contained cocaine was alone enough to show that defendant's possession was knowing.

Judge BEASLEY concurring in separate opinion.

Appeal by defendant from order entered 30 March 2011 by Judge James E. Hardin, Jr. and judgments entered on or about 6 April 2011

by Judge Stuart Albright in Superior Court, Guilford County. Heard in the Court of Appeals 12 January 2012.

*Attorney General Roy A. Cooper, III, by Assistant Attorney General Andrew O. Furuseth, for the State.*

*David L. Neal, for defendant-appellant.*

STROUD, Judge.

Defendant was convicted of trafficking cocaine by possessing 400 grams or more of cocaine and trafficking cocaine by transporting 400 grams or more of cocaine. Defendant appeals, arguing the trial court erred in denying his motion to suppress and motion to dismiss. For the following reasons, we affirm the trial court's denial of defendant's motion to suppress and find no error in the trial court's denial of defendant's motion to dismiss.

## I. Background

In April of 2010, defendant was indicted for various drug offenses. On or about 7 December 2010, defendant filed a motion to suppress:

1. Any statement(s) or other information gleaned from an unnamed person or from unnamed persons who allegedly provided information to law enforcement officers causing the officers to conduct an investigation leading to the stop and subsequent search of a vehicle defendant was allegedly operating on or about December 10, 2009 in Guilford County, North Carolina; and

2. Any evidence obtained during a search of a Honda Civic automobile which defendant was allegedly operating on or about December 10, 2009 in Guilford County, North Carolina.

On 30 March 2011, the trial court entered an order denying defendant's motion to suppress based, *inter alia,* upon the following findings of fact:

16. Officer M.P. O'Hal was a uniformed officer of the Greensboro Police Department who had received narcotics interdiction and arrest training in his capacity as a K-9 handler and instructor during his 10 ½ year career with the Greensboro Police Department. During his career, he had also been certi-

**STATE v. LOPEZ**

[219 N.C. App. 134 (2012)]

fied as a radar operator for speeding enforcement purposes, although his certification had expired because of a change in duties. Also, at that time he had received training in estimating the speed of moving vehicles.

17. Officer O'Hal was on patrol in the vicinity of the surveillance being conducted by the detectives and received a communication from Sergeant Koonce instructing him to stop the white Honda driven by the defendant and related that there was a large quantity of cocaine in the vehicle. Officer O'Hal was in uniform, but he was operating an unmarked Chevrolet Tahoe on the night in question; and

18. Officer O'Hal followed the white Honda for about 2 ½ to 3 miles. He paced it for about ½ mile and utilizing his speedometer, which was regularly calibrated, he formed the opinion that the Honda was traveling approximately 70 mph in a 60 mph zone. He conducted a "routine traffic stop" for that infraction and to investigate possible illegal narcotics activities.

19. He approached the vehicle on the passenger side and informed the driver, later identified as the defendant, Endy Lopez, that he had stopped him for speeding and asked hi[m] for a valid license or identification to which, the defendant [responded] that he did not know that he was speeding and that he was going to Winston for a construction job and just got off work. Not being able to produce a valid driver's license, the defendant, Endy Lopez, produced a Mexican identification card and informed the officer that he did not have a valid operator's license in North Carolina or in any other state.

20. Officer O'Hal continued asking Mr. Lopez questions about where he was going and what he was doing for the purpose of conducting a narcotics investigation, based upon his training and experience in that regard. Officer O'Hal noticed that the defendant was very well kept, had clean hands, and that his clothing was clean and "lightly dressed" for the conditions. In Officer O'Hal's opinion, the cleanliness of the vehicle, the defendant's clothing and his hands w[ere] not consistent with his response to questions indicating that he was employed in the construction business.

21. The defendant was very polite and cooperative during the stop, but became visibly nervous by breathing rapidly when questioned further. His heart appeared to be beating rapidly, he exchanged glances with his passenger and both individuals looked at an open plastic bag in the back seat of the vehicle. Officer O'Hal noticed that the passenger, Garcia, was looking nervous and continuing to look into the back seat. Officer O'Hal also observed dryer sheets protruding from the open bag which also contained a yellow box of clear plastic wrap. Due to his training and experience in narcotics investigations, Officer O'Hal is aware that items such as these are used to package drugs and conceal their identity.

22. Officer O'Hal returned to his patrol vehicle and confirmed by radio communication that Mr. Lopez did not have a valid operator's license. At this point, Officer O'Hal was able to determine that Garcia had an identification card from Virginia. Officer O'Hal then went back to the vehicle the defendant was operating and asked him whether he had anything illegal on his person or in the vehicle.

23. Officer O'Hal asked about the car and the defendant stated that it was not his car and that he was not sure of his friend's name. Officer O'Hal then asked whether the defend-ant had "any weapons, brass knuckles, or drugs?" Officer O'Hal followed by asking permission to search the vehicle by saying "do you mind if I search the vehicle?" Mr. Lopez responded, "No, I don't mind." Officer O'Hal asked "do you understand?" to which the defendant gave the positive response, "I do." In an attempt to confirm this permission, Officer O'Hal followed and asked "do you have a pistol?" The defendant stated, "O.K. you can look" whereupon Officer O'Hal conducted a search of the vehicle. . . .

24. After searching the passenger compartment of the vehicle, Officer O'Hal went to the front of the vehicle. As Officer O'Hal did this, he saw that the defendant appeared to grow very nervous and concerned. Officer O'Hal stated that he is aware th[r]ough his training and experience that contraband is often concealed in the air intake of vehicles. After he got to the front of the vehicle, Officer O'Hal opened the hood, which he knew the defendant had opened a few minutes earlier, and observed that the air intake compartment appeared to be cleaner tha[n] the rest of the parts in the engine compartment.

He released several clips or latches which secured the top of the air filter compartment and removed the top disclosing a large quantity of powder cocaine wrapped in clear plastic.

25. The evidence shows that the encounter lasted a total of between 12-13 minutes. During the period of the stop and search, the defendant was polite and cooperative and did not appear to have any difficulty understanding English. The evidence also shows that the defendant did not limit the scope of Officer O'Hal['s] search of the vehicle nor did he revoke his permission or consent at any time prior to, during, or after the search. Additionally, there is no evidence before the court that the passenger, Garcia, exercised control over the vehicle or in any way limited the search of the vehicle or revoked the permission given to search by the defendant.

Defendant was arrested, indicted, and received a trial by jury. The jury found defendant guilty of trafficking in cocaine by the unlawful possession of 400 grams or more of cocaine ("trafficking by possession") and trafficking in cocaine by the unlawful transportation of 400 grams or more of cocaine ("trafficking by transportation"). The trial court entered judgments sentencing defendant to 175 to 219 months imprisonment for each conviction. Defendant appeals.

## II. Motion to Suppress

[1] Defendant argues that the trial court erred in denying his motion to suppress. Defendant does not specifically challenge any finding of fact made by the trial court but rather generally argues that reasonable suspicion to extend the traffic stop to a search cannot be based upon (1) information from a confidential informant because the informant's information was not corroborated or (2) Officer O'Hal's personal observations once the stop was made. Furthermore, defendant contends that even if there was reasonable suspicion to extend the traffic stop, the State did not demonstrate that defendant's consent for the search was voluntary. Finally, defendant argues that even if defendant's voluntary consent is established, it did not extend to under the hood of the vehicle.

Defendant concedes that he "failed to object to the admission of the evidence[,]" and thus we may only review this argument for plain error.

As a result of the fact that [the defendant] did not object to the admission of the evidence in question at trial, we review the

denial of his suppression motion utilizing a plain error standard of review. Plain error is an error that is so fundamental as to result in a miscarriage of justice or denial of a fair trial. In order to establish plain error, [the defendant] is required to show not only that there was error, but that absent the error, the jury probably would have reached a different result.

*State v. Ellison,* ___ N.C. App. ___, ___, 713 S.E.2d 228, 233-34 (2011) (citations, quotation marks, and footnote omitted). "But before a ruling can be plain error, it must be error." *State v. Wade,* ___ N.C. App. ___, ___, 714 S.E.2d 451, 459 (2011). In reviewing a motion to suppress for errors,

> [i]t is well established that the standard of review in evaluating a trial court's ruling on a motion to suppress is that the trial court's findings of fact are conclusive on appeal if supported by competent evidence, even if the evidence is conflicting. In addition, findings of fact to which defendant failed to assign error are binding on appeal. Once this Court concludes that the trial court's findings of fact are supported by the evidence, then this Court's next task is to determine whether the trial court's conclusions of law are supported by the findings. The trial court's conclusions of law are reviewed *de novo* and must be legally correct.

*State v. Campbell,* 188 N.C. App. 701, 704, 656 S.E.2d 721, 724 (2008) (citations, quotation marks, and brackets omitted).

Although much of defendant's argument focuses on the confidential informant, we need not address these issues as we conclude that Officer O'Hal had a reasonable suspicion to search defendant's vehicle based solely upon what he observed during the traffic stop. As to the traffic stop, defendant does not raise any arguments regarding the legality of the stop and does not contest the trial court's binding finding of fact that Officer O'Hal personally observed defendant driving approximately 10 mph above the speed limit and pulled the vehicle defendant was driving over, at least in part, for that reason. *See State v. Jacobs,* 162 N.C. App. 251, 254, 590 S.E.2d 437, 440 (2004) (noting that unchallenged findings of fact are binding on appeal). Instead, defendant contends that the traffic stop was a pretext to search for drugs; however, this is irrelevant in light of the fact that defendant was lawfully stopped for speeding. *See State v. Parker,* 183 N.C. App. 1,

11, 644 S.E.2d 235, 243 (2007) ("Because Detective Darisse acted with probable cause to believe that defendant committed a traffic infraction, his initial stop of defendant's car did not violate the Fourth Amendment. It is irrelevant to the validity of the stop that Detective Darisse's primary reason for following defendant was that he had received a complaint that defendant was trafficking methamphetamine or that Detective Darisse did not subsequently issue defendant a citation for speeding." (citations and quotation marks omitted)).

Once a stop has been lawfully made,

> the scope of the detention must be carefully tailored to its underlying justification. Once the original purpose of the stop has been addressed, in order to justify further delay, there must be grounds which provide the detaining officer with additional reasonable and articulable suspicion or the encounter must have become consensual. Where no grounds for a reasonable and articulable suspicion exist and where the encounter has not become consensual, a detainee's extended seizure is unconstitutional.

*State v. Jackson*, 199 N.C. App. 236, 241–42, 681 S.E.2d 492, 496 (2009) (citations and quotation marks omitted).

> Our Supreme Court has stated that the police can stop and briefly detain a person for investigative purposes if the officer has a reasonable suspicion supported by articulable facts that criminal activity may be afoot, even if the officer lacks probable cause. This Court has further noted that

> > Reasonable suspicion requires that the stop be based on specific and articulable facts, as well as the rational inferences from those facts, as viewed through the eyes of a reasonable, cautious officer, guided by his experience and training. All the State is required to show is a minimal level of objective justification, something more than an unparticularized suspicion or hunch. A court must consider the totality of the circumstances in determining whether the officer possessed a reasonable and articulable suspicion to make an investigatory stop.

> > Reasonable suspicion is a less demanding standard than probable cause and requires a showing considerably less than preponderance of the evidence.

STATE v. LOPEZ

[219 N.C. App. 139 (2012)]

*State v. Brown,* ___ N.C. App. ___, ___, 713 S.E.2d 246, 248 (2011) (citations, quotation marks, ellipses, and brackets omitted).

Here, defendant does not contest the findings of fact that establish: (1) defendant informed Officer O'Hal he did not have a valid driver's license in North Carolina or in any other state; (2) defendant told Officer O'Hal he worked construction and had "just got[ten] off work" but "defendant was very well kept, had clean hands, and . . . his clothing was clean" leading Officer O'Hal to conclude that "defendant's clothing and his hands w[ere] not consistent with his response to questions indicating he was employed in the construction business[;]" (3) defendant "became visibly nervous by breathing rapidly[;] . . . his heart appeared to be beating rapidly[;] he exchanged glances with his passenger and both individuals looked at an open plastic bag in the back seat of the vehicle[;]" (4) Officer O'Hal "observed dryer sheets protruding from the open bag which also contained a yellow box of clear plastic wrap. Due to his training and experience in narcotics investigations, Officer O'Hal is aware that items such as these are used to package drugs and conceal their identity[;]" (5) "Officer O'Hal . . . confirmed by radio communication that . . . [defendant] did not have a valid operator's license[;]" and (6) "Officer O'Hal asked about the car and the defendant stated that it was not his car and that he was not sure of his friend's name."

We first note that Officer O'Hal's initial questions regarding defendant's license, where defendant was going to and coming from, and defendant's occupation were all within the scope of the traffic stop. *See State v. Aubin,* 100 N.C. App. 628, 633, 397 S.E.2d 653, 656 (1990) ("We recognize that an investigative stop and inquiry must be reasonably related in scope to the initial justification for it. In *Jones,* this Court refused to adopt a rule which would limit an officer's ability to investigate suspicious matters uncovered during an investigatory stop. In *Morocco,* Trooper Lowry asked about the driver's vehicle and registration in the patrol car while filling out a warning ticket. We held that such polite conversation was not improper. In this case, Trooper Lowry asked defendant about his plans for returning the car, whether he still lived in Quebec, what he did for a living and how the weather was in Florida. As in *Morocco,* this conversation did not exceed permissible police behavior. Lowry's investigation was reasonable in subject matter and scope." (citation and quotation marks omitted)), *disc. review denied and appeal dismissed,* 328 N.C. 334, 402 S.E.2d 433, *cert. denied,* 502 U.S. 842, 116 L.Ed. 2d 101 (1991). We conclude that Officer O'Hal had a reasonable suspicion to detain

defendant based upon defendant's driving an unnamed "friend's" car without a valid driver's license, defendant's questionable story regarding his work and where he was going, defendant's nervous demeanor, and Officer O'Hal's observation of the presence of dryer sheets, which cover odor, and plastic wrap, which through his experience he knew was often used to package drugs. *See Brown*, ___ N.C. App. at ___, 713 S.E.2d at 248; *see also State v. Campbell*, 359 N.C. 644, 664, 617 S.E.2d 1, 14 (2005) ("Defendant had no driver's license with him and did not know the name of his friend to whom the car belonged. These [and other] articulable facts were sufficient to give rise to a reasonable suspicion in the mind of a trained police officer that defendant was involved in criminal activity."), *cert. denied*, 547 U.S. 1073, 164 L.Ed. 2d 523 (2006); *State v. Hernandez*, ___ N.C. App. ___, ___, 704 S.E.2d 55, 62 (2010) (noting that lack of a driver's license and providing an inconsistent story were factors to be considered in determining whether reasonable suspicion exists); *State v. Euceda-Valle*, 182 N.C. App. 268, 274-75, 641 S.E.2d 858, 863 ("We hold that the trial court's findings of fact support its legal conclusion that law enforcement had a reasonable suspicion necessary to conduct the exterior canine sniff of the vehicle. Defendant was extremely nervous and refused to make eye contact with the officer. In addition, there was smell of air freshener coming from the vehicle, and the vehicle was not registered to the occupants. And there was disagreement between defendant and the passenger about the trip to Virginia. We conclude that these facts support a basis for a reasonable and cautious law enforcement officer to suspect that criminal activity is afoot."), *disc. review denied or cert. denied*, 361 N.C. 698, 652 S.E.2d 923 (2007); *Jacobs*, 162 N.C. App. at 258, 590 S.E.2d at 442 ("Defendant's nervousness was, therefore, properly considered as one of several factors justifying further detention.")

As we have determined that Officer O'Hal had reasonable suspicion for further detaining defendant and thus requesting to search the vehicle defendant was driving, we must turn to defendant's argument regarding whether his consent to search the vehicle was voluntary. But defendant's argument regarding the involuntariness of his consent is based solely upon defendant's contention that Officer O'Hal did not have reasonable suspicion to detain him. Defendant contends that "[b]y the time consent was sought, [he] was being wrongfully detained, and, as such, his 'consent' was tainted by the illegality of the extended detention." As we have already concluded that Officer O'Hal did have reasonable suspicion upon which to further detain defendant, this argument is without merit.

Lastly, defendant contends that even if he voluntarily consented to Officer O'Hal searching the vehicle he was driving, the consent did not extend to under the hood of the vehicle. Defendant argues that his "consent for Officer O'Hal to look in the car does not reasonably extend to opening the hood, dismantling the air filter compartment, and opening the compartment."

> The standard for measuring the scope of a suspect's consent under the Fourth Amendment is that of objective reasonableness—what would the typical reasonable person have understood by the exchange between the officer and the suspect? . . .
>
> The scope of a search is generally defined by its expressed object.

*Florida v. Jimeno*, 500 U.S. 248, 251, 114 L.E. 2d 297, 302-03 (1991) (citations and quotation marks omitted).

Officer O'Hal asked, "do you mind if I search the vehicle?" Thus, the "expressed object" was the vehicle. *Id.* at 251, 114 L.Ed. 2d at 303. Citing *Jimeno*, defendant contends that "[j]ust as consent to search a car does not extend to opening a closed case inside a trunk, consent to search here did not extend to opening the hood, disassembling the air filter compartment, and opening the air filter." However, a "closed case" is an object separate and apart from the vehicle; whereas both the hood and air filter compartment are part of the vehicle.

As the Supreme Court stated in *Jimeno*,

> [T]he terms of the search's authorization were simple. Respondent granted Officer Trujillo permission to search his car, and did not place any explicit limitation on the scope of the search. . . .
>
> . . . .
>
> A suspect may of course delimit as he chooses the scope of the search to which he consents. . . . The community has a real interest in encouraging consent, for the resulting search may yield necessary evidence for the solution and prosecution of crime, evidence that may insure that a wholly innocent person is not wrongly charged with a criminal offense.

*Id.* at 251-52, 114 L.Ed. 2d at 303 (citations, quotation marks, and brackets omitted).

Here too, "the terms of the search's authorization were simple" and defendant did not specifically exclude the hood of the vehicle nor did defendant object when Officer O'Hal began his search under the hood of the vehicle. *Id.* at 251, 114 L.Ed. 2d at 303. As Officer O'Hal received voluntary consent to search the vehicle, we conclude that this consent extended to a search under the hood of the vehicle. *See Aubin*, 100 N.C. App. at 634, 397 S.E.2d at 654-57 (determining there was no error in the trial court's denial of defendant's motion to suppress where a trooper searched a vehicle with consent including "the back seat area, including lifting the bottom portion of the seat up and out of position" and noting that "in *State v. Belk*, 268 N.C. 320, 150 S.E.2d 481 (1966), the Court held that defendant's consent to the officer's search of his trunk implied consent to search any part of his car. It found support for this holding in the fact that none of the defendants objected to the search once it was begun. In this case, defendant gave oral consent to a search of his car for contraband. He did not object in any way to what Trooper Lowry was doing. It was reasonable for Lowry to lift up the corner of the back seat in the progress of his search").

In summary, we conclude that Officer O'Hal lawfully stopped defendant based upon his personal observations of defendant speeding. Once Officer O'Hal stopped the vehicle, he personally observed the circumstances which created reasonable suspicion of criminal activity for further detaining defendant. Officer O'Hal then requested consent to search the vehicle defendant was driving, and defendant voluntarily gave his consent to a search of the entire vehicle, without restrictions, which included under the hood and in the air filter compartment of the vehicle. Accordingly, we conclude that the trial court did not err in denying defendant's motion to suppress, and therefore defendant certainly has not demonstrated plain error. Therefore, this argument is overruled.

### III.  Motion to Dismiss

[2] Defendant also contends that "the court erred by denying the defendant's motion to dismiss the cocaine trafficking charges because the evidence was insufficient to show that [defendant] 'knowingly' possessed or transported cocaine[.]" (Original in all caps.)

The standard of review for a motion to dismiss is well known. A defendant's motion to dismiss should be denied if there is substantial evidence of: (1) each essential element of the offense charged, and (2) of defendant's being the perpetra-

tor of the charged offense. Substantial evidence is relevant evidence that a reasonable mind might accept as adequate to support a conclusion. The Court must consider the evidence in the light most favorable to the State and the State is entitled to every reasonable inference to be drawn from that evidence.

*State v. Johnson*, 203 N.C. App. 718, 724, 693 S.E.2d 145, 148 (2010) (citations and quotation marks omitted). To establish both trafficking by possession and trafficking by transportation the State must show that defendant knowingly possessed or transported, respectively, the requisite amount of cocaine. *See State v. Baldwin*, 161 N.C. App. 382, 391, 588 S.E.2d 497, 504 (2003) ("Trafficking in cocaine by possession and trafficking in cocaine by transportation . . . require the State to prove that the substance was knowingly possessed and transported."); *see also* N.C. Gen. Stat. § 90-95(a), (h3) (2009).

Here, defendant contests only that the cocaine "was *knowingly* possessed and transported." *Baldwin*, 161 N.C. App. at 391, 588 S.E.2d at 504 (emphasis added). However,

the courts in this State have held consistently that the driver of a borrowed car, like the owner of the car, has the power to control the contents of the car. Moreover, power to control the automobile where a controlled substance was found is sufficient, in and of itself, to give rise to the inference of knowledge and possession sufficient to go to the jury.

*State v. Dow*, 70 N.C. App. 82, 85, 318 S.E.2d 883, 886 (1984) (citation and quotation marks omitted). As the evidence showed defendant was driving the vehicle which contained cocaine, this alone was enough to show that defendant's possession was knowing and to support the denial of the defendant's motion to dismiss. *See id.*

### IV. Conclusion

For the foregoing reasons, we conclude that the trial court properly denied defendant's motion to suppress and motion to dismiss.

AFFIRMED in part; NO ERROR in part.

Judge Stephens concurs.

Judge Beasley concurs in a separate opinion.

BEASLEY, Judge.

Though unpublished, because of the decision in *State v. Burrell,*
186 N.C. App. 132, 650 S.E.2d 66 (2007) where the facts and circum-
stances are parallel to those *sub judice,* I must concur.