NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

SJC-12273

COMMONWEALTH  vs.  ANTHONY C. ORTIZ.


Hampden.     October 3, 2017. - February 12, 2018.

Present (Sitting at Greenfield):  Gants, C.J., Lenk, Gaziano,
          Lowy, Budd, Cypher, & Kafker, JJ.


Constitutional Law, Search and seizure.  Search and Seizure,
     Motor vehicle, Consent, Fruits of illegal search.  Consent.
     Evidence, Result of illegal search.



     Indictments found and returned in the Superior Court
Department on March 25, 2015.

     A pretrial motion to suppress evidence was heard by Edward
J. McDonough, Jr., J.

     An application for leave to prosecute an interlocutory
appeal was allowed by Hines, J., in the Supreme Judicial Court
for the county of Suffolk, and the appeal was reported by her to
the Appeals Court.  The Supreme Judicial Court granted an
application for direct appellate review.


     Cynthia Cullen Payne, Assistant District Attorney (Bethany
Lynch, Assistant District Attorney, also present) for the
Commonwealth.
     Patrick Levin, Committee for Public Counsel Services, for
the defendant.

GANTS, C.J.  In this case we must decide whether a driver's consent to allow the police to search for narcotics or firearms "in the vehicle" authorizes a police officer to search under the hood of the vehicle and, as part of that search, to remove the vehicle's air filter.  We hold that it does not.  A typical reasonable person would understand the scope of such consent to be limited to a search of the interior of the vehicle, including the trunk.  Because the police here exceeded this scope by searching under the hood and removing the air filter, and because the search was not otherwise supported by probable cause and was not a lawful inventory search, the Superior Court judge's order granting the defendant's motion to suppress is affirmed.

Background.  We summarize the facts as found by the motion judge, supplemented by uncontroverted evidence that the judge explicitly or implicitly credited.  See Commonwealth v. Isaiah I., 448 Mass. 334, 337 (2007), S.C., 450 Mass. 818 (2008).  On January 23, 2015, Officer Jared Hamel and Detective Boyle[1] of the Holyoke police department were on patrol in an unmarked police cruiser when they heard loud music coming from a vehicle.  The officers determined that the loud music posed a public safety hazard under a local ordinance that prohibits excessively loud

---

[1] The record does not reflect Detective Boyle's first name.

music in a motor vehicle. Officer Hamel activated the cruiser lights and initiated a stop of the vehicle.

As the officers approached the vehicle, Hamel recognized the driver (the defendant) as someone he had earlier pursued in a foot chase during an incident where the defendant was arrested for breaking into an apartment. Hamel also recalled that the defendant had been charged in two separate incidents with attempted murder and with narcotics and firearms offenses. Hamel also recognized one of the two passengers, George Ortiz, because he recalled an incident where Ortiz had been arrested for trafficking in cocaine after the execution of a search warrant.

As a safety precaution, Hamel requested a backup unit to provide assistance over the police radio. Hamel then asked the defendant for his license and registration. The defendant looked at Hamel, and turned for assistance to Ortiz, who spoke in Spanish to the defendant. Hamel recalled from his prior encounters with the defendant that the defendant "only spoke a little English," and understood that Ortiz was translating Hamel's request for the defendant's benefit. The defendant presented to Hamel a Massachusetts identification card that was not a driver's license, which confirmed that the driver was the defendant. Hamel asked the other passengers if either had a driver's license, and neither did.

Hamel asked the defendant in English if there was anything in the vehicle that the police should know about, including narcotics or firearms. The defendant responded, without hesitation and without any translation from Ortiz, "No, you can check." Hamel asked the defendant and the two passengers to leave the vehicle, and placed all three in handcuffs. All were frisked for weapons; none were found, but the two passengers were each found in possession of marijuana.

Shortly thereafter, other police officers arrived on the scene, including an officer in the K-9 unit; the officer's dog walked around the vehicle but did not alert to anything. The officers searched the front and back seat areas of the vehicle, but found no contraband. Hamel then instructed one of the officers to check under the hood of the vehicle. The officers raised the hood, and a few minutes later, after removing the air filter, Boyle found a black bag that contained two firearms. During the course of this search, the defendant was standing to the side of the road; at no point did he voice any objection to the search.

A few minutes later, the registered owner of the vehicle arrived and was allowed to drive the vehicle away. The search was conducted based solely on the defendant's consent; the police did not consider it to be an inventory search and did not

believe that they had grounds to search the vehicle without a warrant.

The defendant and the two passengers were arrested and transported to a police station, where a Spanish-speaking police officer assisted in taking the defendant's statement. According to that officer, the defendant understood English but was more comfortable with Spanish. In his statement, the defendant admitted, among other things, that the firearms found in the vehicle belonged to him and that he gave consent to the officers to look in his vehicle.

Indictments were returned by a grand jury, charging the defendant, as a habitual offender, with two counts of illegal possession of a firearm, two counts of unlawful possession of ammunition without an identification card, and one count of receiving stolen property. The defendant moved to suppress the firearms and the statements he made at the police station, claiming that the search was unconstitutional and that the statements must be suppressed as fruits of the unconstitutional search.

After an evidentiary hearing, a judge of the Superior Court allowed the defendant's motion. The judge found that the defendant had given his free and voluntary consent to the search but that, because Hamel had asked the defendant whether he had any narcotics or firearms "in the vehicle," the scope of the

consent was limited to a search for narcotics or firearms in the interior of the vehicle and did not include a search "under the hood beneath the air filter."  The judge found that a typical reasonable person interpreting the verbal exchange between Hamel and the defendant "would believe that [the] defendant was limiting the scope of the search to the cabin of the vehicle."

The judge also found that the defendant's silence when Hamel expanded the scope of the search by directing the other officers to search "under the hood" was nothing more than the defendant's "mere acquiescence to a claim of lawful authority," and therefore did not expand the scope of his initial consent.

Having found that the search of the air filter under the vehicle's hood was unconstitutional because it exceeded the scope of the defendant's consent, the judge found that the defendant's statements to police were "directly caused by the illegal search of [the] defendant's vehicle," and therefore were "fruits of the poisonous tree" that also must be suppressed.

The Commonwealth applied for interlocutory review, and a single justice of this court allowed the application.  The defendant then filed an application for direct appellate review, which we allowed.

Discussion.  "In reviewing the allowance of a motion to suppress, we accept the judge's findings of fact absent clear error."  Commonwealth v. Porter P., 456 Mass. 254, 256 (2010).

Where, as here, we find no clear error in the judge's findings, "[w]e then determine 'the correctness of the judge's application of constitutional principles to the facts as found.'" Id., quoting Commonwealth v. Scott, 440 Mass. 642, 646 (2004).

The Commonwealth concedes that the warrantless search of the air filter under the hood of the vehicle is constitutional under the Fourth Amendment to the United States Constitution and art. 14 of the Massachusetts Declaration of Rights only if the defendant consented to such a search. When the police rely on consent to justify a warrantless search, "the prosecution 'has the burden of proving that the consent was, in fact, freely and voluntarily given.'" Commonwealth v. Rogers, 444 Mass. 234, 237 (2005), quoting Bumper v. North Carolina, 391 U.S. 543, 548 (1968). The Commonwealth must show "consent unfettered by coercion, express or implied, and also something more than mere 'acquiescence to a claim of lawful authority.'" Commonwealth v. Walker, 370 Mass. 548, 555, cert. denied, 429 U.S. 943 (1976), quoting Bumper, supra at 549. Here, we accept the judge's findings that the defendant, despite his limited understanding of English, consented to a search of his vehicle. The issue is the scope of that consent.

A search that is based on consent may not exceed the scope of that consent. See Commonwealth v. Cantalupo, 380 Mass. 173, 178 (1980) ("Because consent can legitimize what would otherwise

be an unreasonable and illegal search, a search with consent is reasonable and legal only to the extent that the individual has consented"). "The standard for measuring the scope of a suspect's consent under the Fourth Amendment is that of 'objective' reasonableness -- what would the typical reasonable person have understood by the exchange between the officer and the suspect?" Florida v. Jimeno, 500 U.S. 248, 251 (1991). See Commonwealth v. Gaynor, 443 Mass. 245, 255 (2005).

It bears emphasis that the standard is that of a typical reasonable person, not a typical reasonable police officer. Therefore, the focus is solely on what a typical reasonable person would understand the scope of the consent to be, based on the words spoken and the context in which they are spoken, not on what a police officer may understand as the places in a vehicle where narcotics or firearms may be hidden. Consequently, the fact that a police officer, such as Hamel here, knows from investigative experience that persons sometimes hide firearms and narcotics inside the air filter of a vehicle is irrelevant to a reasonable person's understanding of the scope of the driver's consent.

In State v. Troxell, 78 S.W.3d 866 (Tenn. 2002), the Tennessee Supreme Court confronted similar facts. There, the police officer asked the driver whether he had "any weapons in the vehicle" (emphasis in original). Id. at 872. The driver

responded, "[N]o, nothing." Id. The officer asked, "Okay if we take a look?" and the driver answered, "Yeah, go ahead." Id. at 869. As the court noted, "The verbal exchange therefore expressly indicated that the officer intended to search only for 'weapons' that were 'in the vehicle,' and there was nothing to indicate that the search would encompass more than just the vehicle's interior." Id. at 872. The court, "applying a common sense interpretation to [that] . . . exchange," found that "it was objectively reasonable to conclude that the consent to search included only the interior of the vehicle and any containers that may have contained weapons." Id.

Here, similarly, the exchange between Hamel and the defendant indicated that the defendant's consent was limited to a search of the interior of the vehicle. Hamel asked the defendant if there was anything in the vehicle that the police should know about, including narcotics and firearms, to which the defendant responded, "No, you can check." These words limited the scope of the defendant's consent to a search for narcotics and firearms inside the vehicle, that is, the passenger compartment and trunk, and containers within those areas where narcotics and firearms could reasonably be found. See Jimeno, 500 U.S. at 251.[2]

---

[2] The dissent points to several Federal and State court decisions where police were authorized, based on the defendant's

The most generous understanding of the defendant's consent in this case is that it was ambiguous whether it included the engine area under the hood and whether it authorized the police to remove the air filter. But the police are not allowed to take advantage of such ambiguity when they have the ability to resolve it with clarifying questions.

We have held that the voluntariness of consent to a search must be unambiguous; "[t]he Commonwealth must provide us with more than an ambiguous set of facts that leaves us guessing about the meaning of [the] interaction and, ultimately, the [consenting person's] words or actions." Commonwealth v. Carr,

_____

consent, to search under the hood of the vehicle. Post at note 1. But the words, context, and circumstances of the consent in this case distinguish it from those cases. For instance, in all but one of those cases, consent was given in response to a general request to search; unlike in this case, there were no words indicating that the scope of the search would be limited to items "in the vehicle." In United States v. McSween, 53 F.3d 684, 685 (5th Cir.), cert. denied, 516 U.S. 874 (1995), the police officer asked if the defendant had "any objection to his searching the vehicle," to which the defendant replied that he did not. And in State v. Lopez, 219 N.C. App. 139, 142 (2012), the police officer asked, "[D]o you mind if I search the vehicle?" See also Pincherli v. State, 295 Ga. App. 408, 409, 413 (2008) (police officers' "request for consent was a general one" to search vehicle); Hoskins vs. State, Tex. Ct. App., Nos. 07-03-0053-CR & 07-03-0054-CR (Dec. 23, 2003) ("[N]either [officer's] request nor [defendant's] consent limited the scope of the search," where police officer asked for consent to search vehicle). In the one cited case where the United States Border Patrol agent asked, "May I look inside the truck?," the court noted that, "[b]efore the hood was opened the [defendant] gave permission for an agent to look in the back of the truck and even went so far as to aid in the search." United States v. Sierra-Hernandez, 581 F.2d 760, 764 (9th Cir.), cert. denied, 439 U.S. 936 (1978).

458 Mass. 295, 299 (2010), quoting Rogers, 444 Mass. at 238. "If either the officer's request or the [person's] response is so ambiguous that we are unable to discern whether the [person] voluntarily consented to [the search], our inquiry will be over and the [search] must be deemed unlawful." Carr, supra, quoting Rogers, supra at 238-239. It makes little sense to insist on clarity when determining the voluntariness of consent, but not when determining the scope of that consent. As a matter of logic and constitutional fairness, the requirement of reasonable clarity must also apply to the scope of consent.

Our constitutional jurisprudence with respect to consent searches is already quite protective of law enforcement. To establish that the consent to a search is valid, the Commonwealth need not prove that the consenting person knew that he or she had a right to refuse consent, or that the person was informed of that right. See Schneckloth v. Bustamonte, 412 U.S. 218, 226-227 (1973); Walker, 370 Mass. at 555. See also Rogers, 444 Mass. at 246. It suffices that the consent was given voluntarily and was "unfettered by coercion"; knowledge or ignorance of the right to refuse is simply one factor to be considered under the totality of the circumstances. Walker, supra. We need not consider here whether it is fair that consent to the search of a vehicle can be valid even where it is not knowing. But it is fair to conclude that the scope of that

search should not extend into the realm of the ambiguous, especially when the police can easily resolve that ambiguity with a clarifying question.  See, e.g., United States v. Coburn, 876 F.2d 372, 373-374 (5th Cir. 1989) (after obtaining consent to search truck, United States Border Patrol agent specifically asked for consent to search gasoline tank).

In Commonwealth v. Clarke, 461 Mass. 336, 351-352 (2012), where we considered whether a defendant had invoked his right to silence after being advised of his Miranda rights, we declared, "When law enforcement officials reasonably do not know whether a suspect wants to invoke the right to remain silent, there can be no dispute that it is a 'good police practice' for them to stop questioning on any other subject and ask the suspect to make his choice clear."  We noted that this "'intuitively sensible course' . . . has the benefit both of ensuring protection of the right if invoked and of minimizing the chance of suppression of subsequent statements at trial if not."  Id. at 352, quoting Davis v. United States, 512 U.S. 452, 473 (1994) (Souter, J., concurring in the judgment).  "Far from creating any 'wholly irrational obstacles' to police investigation, . . . the process of asking, in a brief and even-handed fashion, simple clarifying questions does not burden the police."  Clarke, supra, quoting Michigan v. Mosley, 423 U.S. 96, 102 (1975).

We apply this same reasoning to a consent search like this one, where the defendant gave consent to the police to search in his vehicle, but did not with reasonable clarity give the police consent to search beneath the hood or to dismantle the air filter as part of that search. Under the Fourth Amendment and art. 14, unless it is reasonably clear that the consent to search extends beyond the interior of the vehicle, the police must obtain explicit consent before a vehicular search may extend beneath the hood.

Moreover, where such consent is not reasonably clear at the outset, the defendant's silence when the police open the hood cannot be an adequate substitute for consent. The motion judge correctly found that the defendant's silence, while he was in handcuffs and had been removed to the side of the street, was nothing more than "mere 'acquiescence to a claim of lawful authority.'" Walker, 370 Mass. at 555, quoting Bumper, 391 U.S. at 549. Nor, for that same reason, can his failure to revoke his consent be construed as consent to expand the scope of the search beyond the scope to which he had initially consented. See 4 W.R. LaFave, Search and Seizure § 8.1(c), at 23 (5th ed. 2012) ("[A] defendant's failure to object should not be treated as expanding a more limited consent, especially when the circumstances suggest some other possible reason for [the] defendant's silence"). See also United States v. Neely, 564

F.3d 346, 350-351 (4th Cir. 2009) (where defendant consented to search of trunk, failure to object did not expand scope to include passenger compartment); United States v. Wald, 216 F.3d 1222, 1228-1229 (10th Cir. 2000) (where defendant consented to search of passenger compartment, failure to object did not expand scope to include trunk).

Conclusion.  To the extent that it exceeded the scope of the defendant's consent, the search here of the air filter under the hood was unconstitutional.  We therefore affirm the motion judge's order allowing the defendant's motion to suppress the weapons found in the air filter and the defendant's subsequent statements at the police station related to his possession of those weapons.

So ordered.

CYPHER, J. (dissenting, with whom Gaziano and Kafker, JJ., join).  I respectfully dissent.  Under our constitutional framework for evaluating the scope of an individual's consent to a search, we ask, "[W]hat would the typical reasonable person have understood by the exchange between the officer and the suspect?"  Florida v. Jimeno, 500 U.S. 248, 251 (1991).  This requires that we consider the particular facts and circumstances surrounding the exchange, including the "expressed object" of the search, id., and whether the individual exercised his or her right to limit the scope of the search to particular areas.  Commonwealth v. Gaynor, 443 Mass. 245, 256 (2005).  Applying these principles to the facts of this case, I disagree with the court that the defendant's consent was limited to the interior and trunk of the vehicle.  In my view, the defendant's unqualified and unambiguous general consent to search for "any narcotics or firearms in the vehicle," coupled with the defendant's failure to object as the search moved from the interior of the vehicle to beneath its hood, would indicate to "the typical reasonable person" that the defendant had authorized the entire search at issue, including the officers' limited search beneath the hood and under the air filter of the engine.[1]

_____

[1] Numerous Federal and State courts have reached the same or similar conclusions on this issue.  See United States v.

I find the principal case relied on by the court, <u>State</u> v. <u>Troxell</u>, 78 S.W.3d 866 (Tenn. 2002), distinguishable on both the law and the facts.  As the court points out, the precise language used during the verbal exchange between the defendant and officer in each case was the same:  there, as here, the defendant granted the police permission to search for contraband "in the vehicle."  <u>Id</u>. at 869.  Applying "a common sense interpretation to the verbal exchange," the <u>Troxell</u> court concluded that "in the vehicle" referred "only [to] the interior of the vehicle," <u>id</u>. at 872, that is, the passenger compartment. (The defendant in that case argued that his consent "was limited in scope to the interior compartment of the pickup truck."  <u>Id</u>.) The court in this case goes one step further than <u>Troxell</u>, interpreting the very same language to refer not only to the

---

<u>McSween</u>, 53 F.3d 684, 688-689 (5th Cir.), cert. denied, 516 U.S. 874 (1995) (suspect's general consent to search vehicle, coupled with his failure to object to breadth of search, authorized police to search under vehicle's hood); <u>United States</u> v. <u>Sierra-Hernandez</u>, 581 F.2d 760, 764 (9th Cir.), cert. denied, 439 U.S. 936 (1978) (search beneath hood within scope of suspect's general consent); <u>Pincherli</u> v. <u>State</u>, 295 Ga. App. 408, 412-413 (2008) (same); <u>State</u> v. <u>Lopez</u>, 219 N.C. App. 139, 142, 148-149 (2012) (general consent to "search the vehicle" for weapons or drugs "included under the hood and in the air filter compartment"); Hoskins <u>vs</u>. State, Nos. 07-03-0053-CR & 07-03-0054-CR (Tex. App. Dec. 23, 2003) (search beneath hood within scope of suspect's general consent).  Cf. <u>People</u> v. <u>Kats</u>, 2012 IL App (3d) 100683, ¶¶ 28-30 (consent to search "vehicle and its contents for contraband" authorized search behind vehicle's door panel); <u>State</u> v. <u>Powell</u>, 294 N.J. Super. 557, 562-563 (1996) (general consent to search authorized removal of side panel of vehicle's door).

passenger compartment but also the trunk of the vehicle.  I do not see a meaningful difference in this context between a vehicle's trunk and its engine:  both are beyond the passenger compartment and must be opened separately.

I also believe the Troxell court's narrow focus on the colloquial use of the term "in" ignores the important fact that these were not casual exchanges between two civilians, but inquiries about the possible possession of illegal contraband between one civilian and a police officer, which an objective bystander would doubtless take into account when interpreting the exchange.  See Jimeno, 500 U.S. at 251 ("[W]hat would the typical reasonable person have understood by the exchange between the officer and the suspect?" [emphasis added]).

Moreover, the court in Troxell, 78 S.W.3d at 872, noted that it was "worth emphasizing" additional facts about the encounter beyond the particular language used:  the officer requested the defendant's consent only after he had completed his investigation into the traffic offense that prompted the stop to begin with; more significantly, even, the court pointed out that the officers relied on the defendant's general consent to conduct "an extensive, nearly [twenty-]minute search of the interior of the vehicle and its contents and conducted a sweep of the vehicle by using a drug detection dog.  Despite finding no evidence of weapons or drugs, [the officer] . . . continued

the detention of the defendant by then crawling under an examining the underside and gas tank of the vehicle." Id. at 872-873. As the facts of the case reveal, the officer then "instructed the defendant to drive to a service station so the gas tank could be removed." Id. at 869. Only then did the officers discover drugs in the vehicle.

Cases in this area indicate that, apart from the specific language used by a defendant when authorizing a search, the command of the Fourth Amendment to the United States Constitution that a search be "reasonable" also mandates that police may not rely on generalized consent to conduct a forcible, destructive, or unnecessarily prolonged search. See, e.g., Jimeno, 500 U.S. at 251-252 ("It is very likely unreasonable to think that a suspect, by consenting to the search of his trunk [of a vehicle], has agreed to the breaking open of a locked briefcase within the trunk"); United States v. Strickland, 902 F.2d 937, 941-942 (11th Cir. 1990) (consent to search of vehicle's trunk for contraband did not include slashing open of spare tire). When a consented-to search of a vehicle turns into a protracted, fruitless search for drugs, followed by a request from the police that the driver bring the vehicle to a body shop for the physical dismantling of its parts, that search runs counter to this principle, and it is therefore "unreasonable" within the meaning of the Fourth

Amendment. Those are not the facts of this case, however. Here, the stop of the defendant lasted approximately twenty to twenty-five minutes from start to finish, only "a few minutes" were spent beneath the hood of the vehicle, and there is no indication that the police used tools or damaged the vehicle in any way.

I further disagree with the court that the scope of the defendant's consent was in any way ambiguous. The exchange between the police and the defendant left no doubt as to the areas and objects of the intended search: an officer asked the defendant if there were "any narcotics or firearms in the vehicle." The defendant replied, immediately and without hesitation, "No, you can check." His "words placed no limitations on the scope of the search to which he was consenting." Commonwealth v. Cantalupo, 380 Mass. 173, 179 (1980). Accordingly, the officers were authorized to search the vehicle for "narcotics [and] firearms" wherever they might reasonably be found "in the vehicle." Jimeno, 500 U.S. at 251. This included the limited search beneath the hood and under the air filter -- a space that this court has acknowledged may conceal contraband. Cf. Commonwealth v. Bakoian, 412 Mass. 295, 305 (1992) (search beneath hood and under air filter valid component of probable cause-based search of vehicle for

narcotics, during which police are authorized to search any part of vehicle that "may conceal" drugs [citation omitted]).

Finally, to the extent the defendant's general consent left any ambiguity over its proper scope (although I find none), the defendant's failure to object as the officers moved from the interior of the vehicle to beneath its hood is only further evidence that he similarly authorized that portion of the search. See, e.g., United States v. Jones, 356 F.3d 529, 534 (4th Cir.), cert. denied, 541 U.S. 952 (2004) ("a suspect's failure to object [or withdraw his consent] when an officer exceeds limits allegedly set by the suspect is a strong indicator that the search was within the proper bounds of the consent search"). To be clear, I do not interpret the defendant's silence "as expanding a more limited consent," 4 W.R. LaFave, Search and Seizure § 8.1(c) (5th ed. 2012). Rather, I view the original scope of his generalized, unqualified response to have included beneath the hood, and I interpret his silence as the police searched that area of the vehicle as but additional evidence that it fell within the defendant's permission. The motion judge, and now the court, discount this important point, that "[a]lthough it is a suspect's right to limit the scope of a search to which he consents, . . . the defendant did not avail himself of that right." Gaynor, 443 Mass. at 256. I am not convinced that the

fact that the defendant was in handcuffs during the search automatically converts his silence into "mere acquiescence to a claim of lawful authority," as the motion judge and the court characterize it. Just as a defendant may freely and voluntarily consent to a search despite being under arrest, Commonwealth v. Franco, 419 Mass. 635, 642 (1995), so too may a defendant's other actions (or inaction) while in handcuffs factor into our analysis of the scope of a consent-based search.