NOTICE: All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports. If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

18-P-1383                                          Appeals Court

COMMONWEALTH  vs.  ALEXA H. FENCHER.

No. 18-P-1383.

Barnstable.      May 3, 2019. - July 17, 2019.

Present: Wolohojian, Kinder, & Hand, JJ.

Cellular Telephone. Constitutional Law, Search and seizure,
    Probable cause. Search and Seizure, Probable cause,
    Consent. Probable Cause. Consent. Practice, Criminal,
    Motion to suppress, Attorney's fees.

Indictments found and returned in the Superior Court
Department on January 27, 2017.

A pretrial motion to suppress evidence was heard by Gary A.
Nickerson, J.

An application for leave to prosecute an interlocutory
appeal was allowed by Elspeth B. Cypher, J., in the Supreme
Judicial Court for the county of Suffolk, and the appeal was
reported by her to the Appeals Court.

Elizabeth A. Sweeney, Assistant District Attorney, for the
Commonwealth.
Robert W. Nolan for the defendant.

KINDER, J. The indictments in this case allege that the

defendant, Alexa Fencher, and two coconspirators broke into the

home of her uncle, Alfred Boutiette, and beat him about the head and face with a crowbar.[1]  Following an evidentiary hearing, a Superior Court judge allowed the defendant's motion to suppress the fruits of a search of her cellular telephone (cell phone).  The judge reasoned that the police lacked probable cause to seize the cell phone, and that the illegal seizure tainted the defendant's subsequent consent to search her cell phone.  In this interlocutory appeal, the Commonwealth claims error in that ruling, arguing that the seizure of the cell phone was supported by probable cause and that the defendant's consent to search her cell phone was free and voluntary.  We agree and reverse.

Background.  The following facts are drawn from the judge's findings and from undisputed facts in the record that were implicitly credited by him.  See Commonwealth v. Jones-Pannell, 472 Mass. 429, 436 (2015).  On September 23, 2016, at approximately 4:30 A.M., Barnstable Police officers responded to an emergency call regarding a violent home invasion at 37 Wedgewood Drive in Centerville.  Upon arrival, police observed that the victim, Alfred Boutiette, had facial and head injuries

---

[1] The defendant is charged with home invasion, G. L. c. 265, § 18C; armed burglary and assault, G. L. c. 266, § 14; assault with intent to murder, G. L. c. 265, § 15; assault with intent to maim, G. L. c. 265, § 15; mayhem, G. L. c. 265, § 14; two counts of aggravated assault and battery by means of a dangerous weapon, G. L. c. 265, § 15A (c); six counts of conspiracy, G. L. c. 274, § 7; and violation of an abuse prevention order, G. L. c. 209A, § 7.

and was covered in blood.  The victim told police that he had been attacked by multiple individuals while he was sleeping and that he thought the defendant, his niece, against whom he had an active restraining order, was involved in the assault.  The victim explained that although he did not see his assailants, he suspected his niece because earlier that evening "he saw [the defendant's] white Hyundai Sonata parked in his driveway."[2]  The victim further explained that a locked door to his house had been opened and that the defendant had a key to the house.  There was no sign of forced entry and nothing appeared to have been stolen.

Prior to the alleged home invasion, at approximately 3:06 A.M., an officer on patrol observed the same white Hyundai Sonata turn from Route 28 onto Wedgewood Road.  The officer observed the car make a U-turn at the entrance to Wedgewood Drive, where the victim lived, and return to Route 28.

Later that morning, after learning from her grandmother that the police were looking for her in connection with "something that happened to [her] uncle at the house," the defendant agreed to go the Barnstable Police Department to be interviewed.[3]  At 9:52 A.M., approximately five hours after the

---

[2] The white Hyundai Sonata was owned by one of the defendant's grandparents, but the defendant "was known to have possession of the vehicle."

assault was reported, the defendant waived her Miranda rights and agreed to speak with detectives. Over the course of approximately two hours, the defendant responded to questions regarding her activity the night before, her whereabouts, and her relationship with her uncle.[4] As relevant here, the defendant told the detectives that she had been drinking and watching football with several friends at two bars. Thereafter, she went to a friend's house in Hyannis. The group arrived there at 1:00 A.M., and left at 3:00 A.M. to "go smoke near the bridge," where they stayed until sunrise. Someone else drove the white Hyundai, because the defendant was intoxicated. The defendant acknowledged that her car had been parked at 37 Wedgewood Drive the night before and that "[she] had somebody get it for [her] because [of] the [r]estraining [o]rder." At one point, when Detective David Foley pressed her on the details of her explanation, the defendant, referring to her cell phone,

---

[3] We allowed the Commonwealth's motion for transmission to us of the hearing exhibit containing an audiovisual recording of the defendant's police interview, and we have reviewed the recording in addition to the transcript of the interview.

[4] The judge hearing the cell phone suppression motion simultaneously heard and ruled on the defendant's separately filed motion to suppress certain statements she made to the police during the interview. The judge allowed the motion, suppressing statements the defendant made to the police after she requested an attorney at 10:57 A.M. That order is not a subject of this appeal and, for reasons discussed infra, does not affect our decision.

responded, "I actually have videos of me being at the bar and stuff." When Detective Foley stated that he wanted to see the videos later, the defendant replied, "Definitely." The defendant admitted that she had a key to the house at 37 Wedgewood on her person, but denied any involvement in the assault on her uncle.

At 10:15 A.M., the officers seized the defendant's cell phone and her keys. Detective Foley testified that he seized the defendant's cell phone because "she said that she had some text messages that she had woken up to, but [sic] the fact that she had talked to her grandmother about the assault," and "[t]he fact that she said she had videos of her being at the bar the previous night."

Meanwhile, as the detectives interviewed the defendant, another officer observed what appeared to be blood stains near a door handle on the white Hyundai Sonata in which the defendant had arrived at the Barnstable Police Department. The officer communicated that information to the detectives conducting the interview before the defendant's keys and cell phone were seized.

After he seized the defendant's cell phone, Detective Foley asked the defendant "if she would be willing to consent to a search of her cell phone" and said that, if she did not consent, he would "write a search warrant to download the contents of the

phone."  The defendant "acted like she didn't care if [the police] had looked at her phone" and "stated she was willing to sign a consent form to search her phone."  At 10:35 A.M., the defendant signed a Barnstable Police Department form consenting to the search of her cell phone and gave Detective Foley "the password to unlock the phone and the passwords to her user accounts that are in the consent forms."  The account listed on the consent form is "Snap chat."[5]  The defendant refused to give consent for police to search the white Hyundai Sonata or to take her fingerprints and fingernail scrapings.

At 10:57 A.M., the defendant asked Detective Foley, "Can I talk to my grandmother and a lawyer please?"  When Detective Foley responded, "are you asking for a lawyer," the defendant responded, "I just want to talk to my grandmother, so she can tell you what type of kid I am."  Thereafter, the interview continued until 12:04 P.M.  The judge found that the defendant's request for counsel at 10:57 A.M. was unequivocal and allowed the defendant's separate motion to suppress statements as to anything the defendant said after 10:57 A.M.  See note 4, supra. The Commonwealth has not appealed that ruling and we do not consider those statements in our decision.

---

[5] The defendant stated that the video was on her Snapchat account.  "Snapchat is a social media website on which a member may share information with a network of 'friends.'"  F.K. v. S.C., 481 Mass. 325, 327 (2019).

During the course of the interview, the defendant, a college student, was sober, communicative, and responsive to the questions.  The tone of the interview was conversational.  The judge concluded that, beyond a reasonable doubt, the defendant's statements prior to 10:57 A.M. were voluntary.

Discussion.  A search may be conducted without a warrant provided the search is undertaken with the free and voluntary consent of a person with the authority to give that consent.  Schneckloth v. Bustamonte, 412 U.S. 218, 222 (1973).  The Commonwealth bears the burden of proving consent, Commonwealth v. Aguiar, 370 Mass. 490, 496 (1976), but neither probable cause nor reasonable suspicion are required to ask for consent to search, J.A. Grasso, Jr., & C.M. McEvoy, Suppression Matters Under Massachusetts Law § 11-3[b] (2018).  However,

> "[w]hen consent to search is obtained through exploitation of a prior illegality, particularly very close in time following the prior illegality, the consent has not been regarded as freely given.  Evidence gathered in a search allowed by such a compromised consent has been thought to be tainted and inadmissible."

Commonwealth v. Midi, 46 Mass. App. Ct. 591, 595 (1999).  In such circumstances, "[i]t is the Commonwealth's burden to establish that the evidence it has obtained and intends to use is sufficiently attenuated from the underlying illegality so as to be purged from its taint."  Commonwealth v. Fredericq, 482 Mass. 70, 78 (2019), quoting Commonwealth v. Damiano, 444 Mass.

444, 454 (2005). Here, the judge concluded that the defendant's consent to search her cell phone at 10:35 A.M. was tainted by the illegal seizure of the cell phone from the defendant at 10:15 A.M. Specifically, the judge reasoned that the police lacked probable cause to seize the cell phone at the time it was taken from the defendant and that the defendant's subsequent consent was not sufficiently attenuated from the illegal seizure. We review the judge's decision under familiar standards. We accept his factual findings unless they are clearly erroneous, see Commonwealth v. Welch, 420 Mass. 646, 651 (1995), and "make an independent determination of the correctness of the judge's application of constitutional principles to the facts" as found, Commonwealth v. Mercado, 422 Mass. 367, 369 (1996). Because we conclude that the seizure of the defendant's cell phone was supported by probable cause and that the defendant's subsequent consent to search was free and voluntary, we need not reach the question of attenuation.

1. Probable cause to seize the cell phone. "Although art. 14 [of the Massachusetts Declaration of Rights] and the Fourth Amendment [to the United States Constitution] guard against both, a search and a seizure are distinct legal concepts." Commonwealth v. Almonor, 482 Mass. 35, 56 (2019) (Lenk, J., concurring). "[T]he government conducts a search when it 'intrudes on a person's reasonable expectation of privacy,'" and

it "conducts a seizure when it interferes with an individual's property rights."  Id., quoting Commonwealth v. Augustine, 467 Mass. 230, 241 (2014).  Before the police may seize an item as evidence, "they must have 'a substantial basis for concluding that' the item . . . contains 'evidence connected to the crime' under investigation."  Commonwealth v. White, 475 Mass. 583, 588 (2016), quoting Commonwealth v. Escalera, 462 Mass. 636, 642 (2012).  There must be a timely nexus between evidence of criminal activity and the object of the seizure.  See Commonwealth v. Holley, 478 Mass. 508, 521 (2017).  "The concept of 'nexus' means nothing more than a factually based connection between criminal activity and the particular place to be searched and things to be seized."  J.A. Grasso, Jr., & C.M. McEvoy, Suppression Matters Under Massachusetts Law § 8-2[e][5], at 8-17 (2018).

To determine whether the police had a substantial basis to believe the defendant's cell phone contained evidence connected to the crime, we examine the facts of which the police were aware at 10:15 A.M., the moment they seized it.  At that point, the police had the following information:  the victim had been badly beaten by multiple assailants during a home invasion approximately six hours earlier; the white Hyundai Sonata associated with the defendant was seen in the area of the victim's residence less than two hours before the assault; the

defendant had a key to the victim's residence and there was no sign that the home invasion involved forced entry; the victim told police he suspected the defendant was involved because he had seen the white Hyundai Sonata parked at his residence earlier in the evening and he had an active restraining order against her; there were suspected blood stains on the exterior of the Hyundai Sonata when the defendant arrived at the police station in that vehicle the next morning; the defendant's explanation of her whereabouts at various times on the night of the assault was not consistent with other information the police had developed; and the defendant told the detectives that she "[had] videos of me being at the bar and stuff" on her cell phone.

Because such video evidence could establish where, when, and with whom the defendant was in the hours before the home invasion, the police had "a substantial basis for concluding" that video evidence stored on the defendant's cell phone contained "'evidence connected to the crime' under investigation" (citation omitted).  White, 475 Mass. at 588. See Commonwealth v. Jordan, 91 Mass. App. Ct. 743, 751 (2017) (evidence of suspect's location a component of probable cause analysis if it would be helpful in proving crime).  Accordingly, we conclude there was probable cause to believe that video recordings connected to the investigation would be located in

the defendant's cell phone, and therefore there was probable cause to seize it.

The motion judge relied on White, supra, to support his conclusion that the police lacked probable cause to seize the defendant's cell phone.  There, the Supreme Judicial Court concluded that

> "'[i]nformation establishing that a person [may be] guilty of a crime does not necessarily constitute probable cause to search' or seize the person's cellular telephone, even where the police believe, based on their training and experience in similar cases, that the device is likely to contain relevant evidence . . . .  Rather, even where there is probable cause to suspect the defendant of a crime, police may not seize or search his or her cellular telephone to look for evidence unless they have information establishing the existence of particularized evidence likely to be found there" (emphasis added).

White, 475 Mass. at 590-591, quoting Commonwealth v. Pina, 453 Mass. 438, 441 (2009).  In White, the fruits of the cell phone search were suppressed because there was no evidence that any particular piece of evidence would be found on the defendant's cell phone.  Id. at 592.  The police relied exclusively on their experience and opinion that it was likely that the suspects communicated using the defendant's cell phone.  Id. at 591.  The situation here was different.  The defendant volunteered that she had taken videos the night before -- videos that could reveal where she was and who she was with on the night of the crime.  This admission provided the kind of particularized

evidence not present in White.[6]  For these reasons, the seizure of the cell phone was lawful.

2.  Consent to search.  After the cell phone was seized, the police used a standard Barnstable Police Department form to document the defendant's consent to permit them "to take custody of, copy, and analyze the items detailed below for evidence."[7] The form further identified the defendant's "iPhone 6" under the heading "Digital Device Information" and her "Snap chat" account under the heading "User Accounts To Be Searched."  Following the signed execution of the written consent form, the police

---

[6] We are not persuaded by the Commonwealth's contention that evidence of text messages to the defendant from her grandmother on the morning after the assault added to the probable cause calculus.  Based on the evidence produced at the hearing, those text messages simply informed the defendant that the police wanted to speak with her about "something that happened to [her] uncle at the house."

[7] The form states in part,

"I, Alexa Fencher, hereby authorize Det. Foley of the Barnstable Police Department, or any other law enforcement officer or digital evidence analyst working with the aforementioned officer, to take custody of, copy, and analyze the items detailed below for evidence.  I understand that copies of the contents of the items, including all files and data, may be created and retained for analysis.  I also understand that the analysis of the copies of the media may continue even after the items designated for analysis are returned.  I provide my consent to this analysis freely, willingly, and voluntarily, and with the knowledge that I have the right to refuse consent. I provide my consent without fear, threat, coercion, or promise of any kind."

extracted "text messages, call logs, videos, pictures, device location information, [and] contact information" from the defendant's cell phone. The record is silent regarding what sources within the cell phone were searched to locate and extract the seized information, but the Commonwealth conceded at argument that information was extracted from sources other than the defendant's Snapchat account. The Commonwealth argued that the consent form indicated the defendant's consent to search all databases within her cell phone. Although the defendant's brief does not claim that her consent was limited to the Snapchat account, the consent form itself is ambiguous on that point. Accordingly, we consider the scope of the defendant's consent.

A search may be conducted without a warrant provided it is undertaken with free and voluntary consent, Schneckloth v. Bustamonte, 412 U.S. at 222, but "[a] search that is based on consent may not exceed the scope of that consent," Commonwealth v. Ortiz, 478 Mass. 820, 824 (2018). The standard for measuring the scope of consent "is that of 'objective' reasonableness -— what would the typical reasonable person have understood by the exchange between the officer and the suspect?" Id., quoting Florida v. Jimeno, 500 U.S. 248, 251 (1991). "The focus is solely on what a typical reasonable person would understand the scope of the consent to be," based on the "totality of the

circumstances," including the words spoken and the context in which they are spoken.  Ortiz, supra at 824, 826.

Viewing the form in the context of the entire exchange between Detective Foley and the defendant, we are confident that a reasonable person would conclude that the defendant's consent to search her cell phone was without limitation.  The judge found that Detective Foley communicated the police's intent to search the entire cell phone when he stated as the objective, whether by warrant or by obtaining consent, "we're taking your car and your cell phone . . . we're going to, at some point, examine your cell phone for any potential evidence in here . . . [a]nd that will allow us to go in there and read all your text messages and everything from last night all through this morning."  The judge further found that, thereafter, the defendant consented to the search of her cell phone and provided passwords to both the phone and her Snapchat account.  He found no limitation on the scope of the defendant's consent to search her cell phone.

Our conclusion is supported by the fact that the defendant clearly understood that she had the right to refuse consent to search, even though proof of such knowledge is not required.  See Ortiz, 478 Mass. at 826.  During the interview with Detective Foley, the defendant declined consent to a search of the white Hyundai Sonata and she also declined consent to take

her fingerprints and swab her fingernails for possible genetic evidence.  At no time, however, did the defendant express any reluctance to allow the search of her cell phone or express any limitation on what within her cell phone could be searched.  Finally, our independent review of the video recording of the defendant's interview reveals that the specific reference to the Snapchat account was added to the form by Detective Foley after the defendant had signed the form authorizing a general search of her cell phone.  Simply put, when we apply a common sense interpretation to the entire exchange between the defendant and Detective Foley, see id. at 824, it is objectively reasonable to conclude that the defendant's consent to search her cell phone was free, voluntary, and unlimited.

3.  Attorney's fees and costs.  Prior to the scheduling of argument in this appeal, the defendant filed a request for reasonable appellate attorney's fees and costs with supporting documentation pursuant to Mass. R. Crim. P. 15 (d), as amended, 476 Mass. 1501 (2017).  The request was premature.  See Commonwealth v. Ennis, 441 Mass. 718, 720 (2004) ("a defendant shall file a rule 15 [d] request within thirty days of . . . the issuance of the rescript from the appellate court that decides the appeal . . . " [emphasis added]).  We allowed the Commonwealth to defer filing its opposition as to the amount requested, and we now further order as follows:  The defendant

shall have thirty days from the date the rescript issues to file any revised rule 15 (d) request and supporting materials.  The Commonwealth shall then have thirty days to file its response.  See id. at 721 n.3.

Conclusion.  Because the police had probable cause to seize the defendant's cell phone, and because the defendant voluntarily consented to the search without limitation, we reverse the judge's order suppressing evidence obtained from the search of the defendant's cell phone.

So ordered.