STATE OF NORTH CAROLINA v. LEWIS EDWARD JACOBS, III, DEFENDANT

No. COA02-1668

(Filed 20 January 2004)

**1. Search and Seizure— traffic stop—reasonable suspicion**

A traffic stop was justified by reasonable suspicion, and the trial court correctly denied defendant's motion to suppress controlled substances seized in the subsequent search, where defendant's vehicle was slowly weaving within in its lane, touching the lane markers on each side, at 1:43 a.m.

**2. Search and Seizure— investigatory detention—length reasonable**

An investigatory detention following a traffic stop did not continue for an unreasonable time, and the trial court correctly denied defendant's motion to suppress controlled substances seized during the detention, where the officer was suspicious prior to the stop that defendant might be impaired, might be a murder suspect or have knowledge of the suspect, and might be involved in narcotics trafficking; defendant's responses to the officer's questions did not fully resolve the suspicions; and defendant was very nervous.

**3. Search and Seizure— request for consent to search—reasonable suspicion not required**

Reasonable suspicion is not required for an officer to request consent for a search. Furthermore, the search of this defendant's car (which led to the discovery of Ecstacy on defendant) is not tainted by unlawful detention and there is no showing that defendant's consent was not voluntary.

Appeal by defendant from order and judgment entered 30 July 2002 by Judge Orlando Hudson in Alamance County Superior Court. Heard in the Court of Appeals 13 October 2003.

*Attorney General Roy Cooper, by Special Deputy Attorney General Gary R. Govert, for the State.*

*Daniel H. Monroe, for the defendant-appellant.*

GEER, Judge.

Defendant Lewis Edward Jacobs, III, who pled guilty to several drug-related offenses, appeals from the trial court's denial of his motion to suppress evidence obtained in a search of his car and his person. Although defendant acknowledges that he consented to the search of his car and does not dispute that the officer had probable cause to search his person as a result of evidence obtained in the car search, defendant contends that the officer lacked reasonable suspicion to stop defendant's car and detain defendant for five minutes of questioning. Based on the totality of the circumstances, we disagree and affirm the trial court's order.

Only the State offered evidence at the hearing on defendant's motion to suppress. That evidence tended to show the following. At approximately 1:43 a.m. on 8 November 2001, Officer Chris Smith of the Burlington Police Department observed a car with a Tennessee license plate continuously weaving back and forth in its lane over a distance of three-quarters of a mile. There were several bars in the area where the officer spotted the car. Officer·Smith checked the tags and learned that the vehicle was registered to Gary McCray of Johnson City, Tennessee. That fact caused Officer Smith concern for two reasons. First, the FBI and the Johnson City Police Department had notified the Burlington Police Department that a suspect in a Johnson City murder was now in Burlington. Second, Officer Smith had been advised by vice officers that a substantial amount of drug-trafficking occurred between Burlington and Johnson City. A week earlier, he had stopped another car with Johnson City tags and arrested the driver for possession of marijuana.

Officer Smith stopped defendant's car and called for back-up. He ordered defendant out of the car and conducted a pat-down search to ensure defendant was not armed. Defendant appeared to be the same age as the murder suspect. Officer Smith then asked defendant for his driver's license, which listed defendant's address as Durham, North Carolina. Officer Smith asked defendant who owned the car and defendant replied that it belonged to his brother, Gary McCray of Durham. Officer Smith then asked why the car was registered in Johnson City and why defendant and his brother had different last

names. Defendant could not give the officer an explanation for their different names and Officer Smith was never able to confirm that defendant and McCray were in fact brothers.

Officer Smith explained to defendant why he had stopped him and asked whether he knew the murder suspect. When defendant denied any knowledge of the man, Officer Smith asked defendant why he was in Burlington at that hour when he lived in Durham. Defendant claimed he was going to see a woman named Monica who lived on Maple Avenue near a particular apartment complex. He did not know her last name.

Officer Smith testified that during the questioning defendant "appeared to be nervous to me. . . . his hands wasn't [sic] shaking or his body wasn't shaking, but he just was kind of . . . antsy, just kind of moving around." Officer Smith asked defendant whether he had been arrested for or convicted of any charges and then checked for active warrants. After determining that there were no outstanding warrants against defendant, Officer Smith explained to defendant that he had information regarding the transport of drugs between Johnson City and Burlington and asked if defendant had any illegal drugs in his car. When defendant said that he did not, Officer Smith asked defendant for consent to search his car.

Defendant consented to the search and told Officer Smith that he had a large amount of money in the car, which defendant claimed was from the sale of a motorcycle. Officer Smith recovered a bundle of bills in a rubber band. Officer Smith noticed an odor of marijuana in the car and found loose tobacco. Based on his training and experience, Officer Smith believed the tobacco came from hollowed-out cigars used to smoke marijuana. When Officer Smith asked defendant about the tobacco and the smell of marijuana, defendant told him that someone had smoked marijuana in the car earlier in the day.

Officer Smith then conducted a search of defendant's person because, Officer Smith testified, "I had smelled the odor of marijuana in the vehicle that he was in; and he also admitted marijuana being inside the vehicle; and I was looking to see if he had any marijuana on his person." Officer Smith searched defendant's shirt pockets, pants pockets, socks, and shoes, but did not find anything. Officer Smith then instructed defendant to pull down his pants so that he could inspect defendant's underwear and crotch area. Officer Smith testified that defendant's hands started shaking as he pulled the "front part of his breeches out[.]" Officer Smith saw a plastic bag in defend-

ant's crotch area. He told defendant to pull his pants up and hand-cuffed defendant.

When Officer Smith asked defendant to identify the object in his crotch area, defendant claimed it was a bag of Viagra that he had received as partial payment for the motorcycle. Officer Smith retrieved the plastic bag, which contained pink pills, and located a second bag, also in defendant's crotch area, containing blue pills. Defendant claimed the blue pills were Viagra as well. All the pills were stamped; from his training, Office Smith recognized that the stamping likely indicated that the pills were methylenedioxymetham-phetamine (MDMA), also known as Ecstasy. The officer also found a third bag containing marijuana. He then arrested defendant for pos-session of marijuana and MDMA.

Defendant was charged with two counts of trafficking in a con-trolled substance by possession of MDMA; one count of possession of MDMA with intent to manufacture, sell and/or deliver a controlled substance; misdemeanor possession of marijuana; maintenance of a car for the use, storage and/or sale of a controlled substance; and attaining the status of habitual felon. Defendant moved to suppress the evidence gathered during the search of the car and his person on the grounds that the search violated his rights under the federal and state constitutions and under the General Statutes. Following the trial court's denial of defendant's motion, defendant pled guilty to all the charges, including attaining the status of habitual felon, but reserved his right to appeal the trial court's order on his motion to suppress. The trial court sentenced defendant to 80 to 105 months in prison.

Review of a trial court's denial of a motion to suppress is strictly limited to a determination whether the trial court's findings of fact are supported by competent evidence and whether those findings sup-port the trial court's ultimate conclusion of law. *State v. Thompson*, 154 N.C. App. 194, 196, 571 S.E.2d 673, 675 (2002). Defendant has not assigned error to any of the trial court's findings of fact; those find-ings are therefore binding on appeal. *Static Control Components, Inc. v. Vogler*, 152 N.C. App. 599, 603, 568 S.E.2d 305, 308 (2002).

I

[1] Defendant first challenges Officer Smith's stop of his car. Before a police officer may stop a vehicle and detain its occupants without a warrant, the officer must have a reasonable suspicion that crimi-nal activity may be occurring. *State v. McArn*, 159 N.C. App. 209,

582 S.E.2d 371, 374 (2003) (citing *Terry v. Ohio*, 392 U.S. 1, 30, 20 L. Ed. 2d 889, 911, 88 S. Ct. 1868, 1884 (1968)). "[R]easonable suspicion" requires that "[t]he stop . . . be based on specific and articulable facts, as well as the rational inferences from those facts, as viewed through the eyes of a reasonable, cautious officer, guided by his experience and training." *State v. Watkins*, 337 N.C. 437, 441, 446 S.E.2d 67, 70 (1994). All that is required is a "minimal level of objective justification, something more than an 'unparticularized suspicion or hunch.' " *Id.* at 442, 446 S.E.2d at 70 (quoting *U.S. v. Sokolow*, 490 U.S. 1, 7, 104 L. Ed. 2d 1, 10, 109 S. Ct. 1581 (1989)). A court must consider the totality of the circumstances in determining whether reasonable suspicion to make an investigatory stop existed. *Id.* at 441, 446 S.E.2d at 70. This Court reviews *de novo* a trial court's conclusion of law that a reasonable, articulable suspicion existed to justify a stop.

The trial court found that the stop occurred at 1:43 a.m. and that defendant's vehicle was "slowly weaving within its lane of travel touching the designated lane markers on each side" prior to the stop. Based on these findings, the court concluded that Officer Smith "had a reasonable, articulable suspicion to believe the operator of the vehicle was committing an implied consent offense." An implied consent offense refers to an impaired driving or alcohol-related offense. *See* N.C. Gen. Stat. § 20-16.2(a1) (2003). This Court has previously concluded that facts comparable to those found by the trial court are sufficient to establish reasonable suspicion.

In *State v. Watson*, 122 N.C. App. 596, 599, 472 S.E.2d 28, 30 (1996), a police officer observed the defendant driving on the dividing line of a two-lane highway near a nightclub. After the officer turned to follow the defendant's vehicle, the officer noticed the vehicle weaving back and forth within its lane for about 15 seconds. *Id.* at 598, 472 S.E.2d at 29. This Court held "that this evidence is sufficient to form a suspicion of impaired driving in the mind of a reasonable and cautious officer." *Id.* at 599-600, 472 S.E.2d at 30. Officer Smith's observation of defendant's weaving within his lane for three-quarters of a mile at 1:43 a.m. in an area near bars was sufficient to establish a reasonable suspicion of impaired driving. We find this case indistinguishable from *Watson* in that, although defendant's weaving within his lane was not a crime, that conduct combined with the unusual hour and the location was sufficient to raise a reasonable suspicion of impaired driving. *See also State v. Jones*, 96 N.C. App. 389, 395, 386 S.E.2d 217, 221 (1989), *disc. review denied*, 326 N.C. 366, 389 S.E.2d 809 (1990) (stop justified when defendant was driving

20 miles below speed limit and weaving within his lane); *State v. Bonds*, 139 N.C. App. 627, 629, 533 S.E.2d 855, 857 (2000) ("[D]efendant correctly points out that most North Carolina cases upholding investigatory stops in the context of driving while impaired have involved weaving within a lane or weaving between lanes.").

## II

**[2]** Defendant next argues that the search of his car was unlawful despite his consent because the length of the investigatory detention was unreasonable. Defendant contends the detention should have ended when Officer Smith completed the pat-down search and determined there were no outstanding warrants against defendant.

Our Supreme Court has held that once an officer has lawfully stopped a person, the officer may further detain the person only if he has "reasonable suspicion, based on specific and articulable facts, that criminal activity is afoot." *State v. McClendon*, 350 N.C. 630, 636, 517 S.E.2d 128, 132 (1999). It is, however, reasonable for an officer, following a lawful stop, to "ask the detainee questions in order to obtain information confirming or dispelling the officer's suspicions" that led to the stop. *Id.*

After reviewing the evidence and the trial court's findings, we conclude that several factors gave rise to reasonable suspicion that justified the brief further detention. First, prior to the stop, Officer Smith was suspicious that defendant might be impaired, that defendant might be a murder suspect or have knowledge of the murder suspect, and that defendant could be involved in drug trafficking. Prior to his request for permission to search defendant's car, Officer Smith spent three to five minutes asking defendant questions specifically focused on alleviating those concerns, as he was permitted to do. *Id.*

Defendant's responses to Officer Smith's questions did not fully resolve the officer's suspicions. As a result of his questions, Officer Smith learned that defendant was not the owner of the car, but Officer Smith could not confirm that defendant was authorized to drive the car because he could not verify that the registered owner was, in fact, defendant's brother. Further, Officer Smith could not resolve why defendant was driving a Johnson City, Tennessee car in the early hours of the morning in Burlington. Defendant could not even provide the last name or a precise address for the woman he

said he was visiting at 1:43 a.m. Finally, as the trial court found, Officer Smith observed that, during this brief questioning, defendant was "acting very nervous."

Other courts have found such circumstances sufficient to support a reasonable further detention. *See McClendon*, 350 N.C. at 637, 517 S.E.2d at 133 (defendant's extreme nervousness and failure to provide credible identification of car's owner were among factors giving rise to reasonable suspicion warranting detention of 15 to 20 minutes). *See also United States v. Purcell*, 236 F.3d 1274, 1280 (11th Cir.) (reasonable suspicion justified extending detention to ask additional questions when car rental agreement was not in driver's name and defendant was stopped in area where drug couriers operated), *cert. denied*, 534 U.S. 830, 151 L. Ed. 2d 38, 122 S. Ct. 73 (2001); *United States v. Perez*, 37 F.3d 510, 514 (9th Cir. 1994) (investigative detention warranted by defendant's nervousness, the fact defendant was not van's registered owner, the fact defendant was heading toward city known as a drug hub, and an inconsistency in one of defendant's answers); *United States v. Gonzalez-Lerma*, 14 F.3d 1479, 1483-84 (10th Cir.) ("[T]he inability of a driver to offer proof that he is entitled to operate a vehicle, combined with inconsistent or incomplete information about ownership of the vehicle, his identity or his destination, will generally give rise to a reasonable suspicion justifying further questioning."), *cert. denied*, 511 U.S. 1095, 128 L. Ed. 2d 484, 114 S. Ct. 1862 (1994).

Defendant argues, however, that his nervousness was "the officer's primary stated reason [at trial] for continuing investigative detention" and that nervousness is "not sufficient to justify further investigative detention[.]" Although defendant points to *State v. Pearson*, 348 N.C. 272, 498 S.E.2d 599 (1998) as support for his position, the Supreme Court, one year later, clarified *Pearson*:

[W]e did not mean to imply [in *Pearson*] that nervousness can never be significant in determining whether an officer could form a reasonable suspicion that criminal activity is afoot. Nervousness, like all other facts, must be taken in light of the totality of the circumstances. It is true that many people do become nervous when stopped by an officer of the law. *Nevertheless, nervousness is an appropriate factor to consider when determining whether a basis for a reasonable suspicion exists.*

*McClendon*, 350 N.C. at 638, 517 S.E.2d at 134 (emphasis added). Defendant's nervousness was, therefore, properly considered as one of several factors justifying further detention.

Even if further detention was justified, we must "examine whether the duration of that detention was reasonable." *Id.* at 639, 517 S.E.2d at 134. The trial court found that Officer Smith's detention of defendant lasted "around three to five minutes." Defendant did not assign error to this finding and it is, therefore, binding on appeal. Under the circumstances, we believe that such a brief detention was reasonable. *Id.* (approving detention for 15 to 20 minutes as "not unreasonable under the circumstances"). *See also United States v. Sharpe*, 470 U.S. 675, 688, 84 L. Ed. 2d 605, 617, 105 S. Ct. 1568 (1985) (20-minute stop not unreasonable when police acted diligently).

[3] Defendant argues alternatively that the State failed to establish that Officer Smith had sufficient reasonable suspicion to request defendant's consent for the search. No such showing is required. As this Court stated in *State v. Sanchez*, 147 N.C. App. 619, 626, 556 S.E.2d 602, 608 (2001) (quoting *State v. Munoz*, 141 N.C. App. 675, 683, 541 S.E.2d 218, 223, *cert. denied*, 353 N.C. 454, 548 S.E.2d 534 (2001)), "[w]hen a defendant's detention is lawful, the State need only show 'that defendant's consent to the search was freely given, and was not the product of coercion,' " *disc. review denied*, 355 N.C. 220, 560 S.E.2d 358 (2002). *See also Schneckcloth v. Bustamonte*, 412 U.S. 218, 248, 36 L. Ed. 2d. 854, 875, 93 S. Ct. 2041 (1973) (State only required to show that consent was voluntarily given). According to a leading commentator, "[i]f a valid consent is obtained . . . there is no additional requirement of probable cause for the search. Indeed, there is no requirement of reasonable suspicion as a prerequisite to seeking consent." 3 Wayne R. LaFave, *Search and Seizure: A Treatise on the Fourth Amendment* § 8.1, at 597 n.8 (3d ed. 1996). Defendant has cited no authority that would require the State to establish reasonable suspicion prior to requesting consent to search.

As for the voluntariness of the consent, defendant's brief only includes a bald assertion that the consent to search defendant's car was involuntary. Defendant points to no facts and makes no legal argument to support any contention that the consent was involuntary. Nor did defendant claim at trial that his consent was involuntary.

Since the search of defendant's car was admittedly consensual and was not tainted by an unlawful detention and since defendant has made no showing that the consent was involuntary, we hold that the

search of defendant's car was lawful. Defendant does not further challenge the search of his person. We therefore hold that the trial court did not err in denying defendant's motion to suppress.

Affirmed.

Chief Judge EAGLES and Judge HUNTER concur.