IN THE COURT OF APPEALS OF NORTH CAROLINA

 2021-NCCOA-501

 No. COA20-564

 Filed 21 September 2021

 Iredell County, Nos. 17 CRS 57458, 18 CRS 661

 STATE OF NORTH CAROLINA

 v.

 KEVIN LEE JOHNSON

 Appeal by Defendant from Judgment entered 25 February 2020 by Judge

 Joseph N. Crosswhite in Iredell County Superior Court. Heard in the Court of

 Appeals 25 May 2021.

 Attorney General Joshua H. Stein, by Associate Attorneys General Jarrett
 McGowan and Robert Pickett, for the State.

 Appellate Defender Glenn Gerding, by Assistant Appellate Defender Michele A.
 Goldman, for defendant-appellant.

 HAMPSON, Judge.

 Factual and Procedural Background

¶1 Kevin Lee Johnson (Defendant) appeals a Judgment entered upon his guilty

 pleas to Felony Possession of Cocaine and to having attained Habitual-Felon Status.

 The Record tends to reflect the following:

¶2 On the afternoon of 22 December 2017, Lieutenant Chris Stone (Lieutenant

 Stone) of the Iredell County Sheriff’s Office was on duty and “sitting in the parking
 STATE V. JOHNSON

 2021-NCCOA-501

 Opinion of the Court

 lot of a convenience store” on Taylorsville Highway. Lieutenant Stone saw Defendant

 get in a vehicle in the convenience store parking lot. According to Lieutenant Stone,

 he did not see Defendant put on his seatbelt upon entering the vehicle. Lieutenant

 Stone observed Defendant as Defendant drove past Lieutenant Stone’s patrol car and,

 according to Lieutenant Stone, Defendant had still not put on his seatbelt.

 Lieutenant Stone initiated a traffic stop of Defendant’s vehicle moments after

 Defendant drove out of the convenience store parking lot. When Lieutenant Stone

 approached the driver’s window of Defendant’s vehicle, he noticed Defendant still did

 not have his seatbelt on. Lieutenant Stone informed Defendant he stopped him for a

 seatbelt infraction but that Lieutenant Stone “was not going to write him a citation.

 If that’s all that was wrong, then [Lieutenant Stone] was going to give him a

 warning.”

¶3 Almost immediately, Lieutenant Stone asked Defendant to get out of

 Defendant’s vehicle and “come back to [Lieutenant Stone’s] vehicle.” As Defendant

 walked back towards Lieutenant Stone’s vehicle, Lieutenant Stone asked Defendant

 if “[Defendant] had anything illegal in his possession.” Defendant said “no.”

 Lieutenant Stone then asked if he “could search [Defendant].” Video from Lieutenant

 Stone’s patrol car shows Defendant stop, as he is still walking back towards

 Lieutenant Stone’s patrol car, and raise his hands above his waist. Lieutenant Stone

 proceeded to reach into Defendant’s sweatshirt pockets, then into Defendant’s trouser
 STATE V. JOHNSON

 2021-NCCOA-501

 Opinion of the Court

 pockets. Eventually, Lieutenant Stone reached into Defendant’s right trouser pocket

 and found “a plastic wrapper with some type of soft material inside, which

 [Lieutenant Stone] believed was possibly powder cocaine[.]” Video evidence reflects

 Lieutenant Stone never conducted an external pat down of Defendant’s person before

 instructing Defendant to get in the front passenger seat of the patrol vehicle.

¶4 Lieutenant Stone placed Defendant in the front seat of his patrol vehicle and

 ran Defendant’s license to make sure it was valid. Lieutenant Stone “advised

 [Defendant] that if he was interested in working with one of our narcotics detectives,

 he could possibly avoid being charged.” Lieutenant Stone gave Defendant a “name

 and phone number to call.” Lieutenant Stone did not charge Defendant for possession

 of cocaine that day; Lieutenant Stone allowed Defendant to return to his vehicle and

 leave. However, Lieutenant Stone “followed up with [his] supervisor . . . a short time

 later” and learned Defendant had not contacted the Sheriff’s Office.

¶5 On 5 March 2018, an Iredell County Grand Jury indicted Defendant on charges

 of Felony Possession of Cocaine and Felony Possession of Drug Paraphernalia as well

 as having attained Habitual-Felon Status. On 6 March 2019, Defendant filed a

 Motion to Suppress “the cocaine found in his pocket.” In his Motion, Defendant

 argued Lieutenant Stone did not have reasonable suspicion to stop Defendant for the

 seatbelt infraction and, even if the stop was lawful, Lieutenant Stone’s “going through

 the Defendant’s pockets for a violation of a seatbelt was excessive, unconstitutional,
 STATE V. JOHNSON

 2021-NCCOA-501

 Opinion of the Court

 and unlawful.” Defendant argued he did not give Lieutenant Stone consent to search

 his pockets—Defendant supported the Motion with a signed affidavit stating

 Defendant consented “to be patted down for weapons” but not for a search of his

 pockets.

¶6 Defendant’s Motion came on for hearing on 8 November 2019. During the

 hearing, Lieutenant Stone testified: “I asked him if he had anything illegal in his

 possession. That’s what I always ask people. . . . I asked him if I could search him. I

 did not ask if I could pat him down. . . . I teach new deputies . . . [a]lways ask to search

 [people].” When asked why he always asks to search people during traffic stops,

 Lieutenant Stone replied: “For safety reasons, you know. If somebody has a weapon

 on them, then I definitely want to know that. . . . I want to know that before they sit

 in the front seat of my car.”

¶7 Defendant also testified at the hearing. Defendant claimed that he had, in

 fact, been wearing his seatbelt when Lieutenant Stone pulled him over. Defendant

 also testified Lieutenant Stone asked if he could “pat [Defendant] down for

 weapons[.]” Defense counsel argued the evidence did not support a finding

 Lieutenant Stone had reasonable suspicion to stop Defendant for not wearing a

 seatbelt. Defense counsel also argued, in the alternative, that Defendant did not give

 knowing consent for Lieutenant Stone to search Defendant’s pockets. Thus,

 according to Defendant, although Lieutenant Stone could have frisked Defendant as
 STATE V. JOHNSON

 2021-NCCOA-501

 Opinion of the Court

 part of the traffic stop with Defendant’s consent, because Lieutenant Stone lacked

 reasonable suspicion of criminal activity beyond the seatbelt infraction, Defendant’s

 consent could not knowingly extend past a frisk allowed for officer safety.

¶8 The trial court made the following oral Findings and Conclusions:

 The officer stopped the defendant, told him he stopped him for a
 seatbelt violation, but was just giving him a warning. The court
 finds at that point, that the officer had reasonable suspicion to
 stop the vehicle because of his observations about the seatbelt. At
 that point, after asking -- after telling the defendant that he was
 just giving him a warning, the officer asked the defendant if there
 was anything illegal on his person. The defendant responded
 there was not. The officer asked, “can I search you?” The
 defendant gave consent to search. The officer conducted a search
 and found a package that he believed to be powder cocaine. The
 court finds that the officer asked for the defendant’s consent to
 search, and the defendant gave consent to search. However, the
 defendant indicates that the officer asked if he could pat him
 down. The court finds that if that were the situation, then when
 the officer did pat him down and felt an object in his pocket that
 was -- that was a knotted bag, that that would come under the
 plain [feel] exception, and he would have had -- the officer would
 have had probable cause to be able to retrieve that item. And so,
 either way the court does find that the officer’s actions were
 justified in this matter. So, therefore the motion to suppress is
 denied.

¶9 Subsequently, upon the denial of his Motion to Suppress, Defendant entered

 guilty pleas to Felony Possession of Cocaine and having attained Habitual-Felon-

 Status as evidenced by the Transcript of Plea. Defendant’s Transcript of Plea

 expressly reserved Defendant’s right to appeal the trial court’s denial of his Motion
 STATE V. JOHNSON

 2021-NCCOA-501

 Opinion of the Court

 to Suppress. Defendant gave oral Notice of Appeal at the plea hearing and filed

 written Notice of Appeal on 25 February 2020.

 Issues

¶ 10 The issues on appeal are whether: (I) Defendant has preserved his argument

 his consent was involuntary on the basis Lieutenant Stone strayed from the traffic

 stop’s mission and measurably prolonged the stop; and, if so, (II) the trial court erred

 in denying Defendant’s Motion to Suppress evidence of the cocaine found on

 Defendant because Defendant’s consent for the search was involuntary as a matter

 of law.1

 Analysis

 I. Preservation

¶ 11 As a threshold matter, the State contends that because Defendant did not

 specifically argue before the trial court that the search was unrelated to the mission

 of the traffic stop and added undue delay to the stop, Defendant has not preserved

 1 On appeal, Defendant also argues: Lieutenant Stone exceeded the scope of the
 consent Defendant gave because Defendant only consented to an external frisk; the trial court
 erred by failing to make Findings regarding the voluntariness of Defendant’s consent; and,
 even if the search did not violate the Fourth Amendment to the United States Constitution,
 it violated Art. I § 20 of the North Carolina Constitution. However, because we conclude
 Lieutenant Stone’s request for consent to search and subsequent search of Defendant’s
 pockets constituted an unreasonable search and seizure, we do not reach these arguments.
 STATE V. JOHNSON

 2021-NCCOA-501

 Opinion of the Court

 this theory for appeal under Rule 10(a)(1) of our Rules of Appellate Procedure. Rule

 10(a)(1) of the North Carolina Rules of Appellate Procedure requires:

 In order to preserve an issue for appellate review, a party must
 have presented to the trial court a timely request, objection, or
 motion, stating the specific grounds for the ruling the party
 desired . . . if the specific grounds were not apparent from the
 context. It is also necessary for the complaining party to obtain a
 ruling upon the party’s . . . motion.

 N.C.R. App. P. 10(a)(1) (2021). “The theory upon which the case is tried in the lower

 court must control in construing the record and determining the validity of the

 exceptions. Further, a constitutional question which is not raised and passed upon

 in the trial court will not ordinarily be considered on appeal[.]” State v. Benson, 323

 N.C. 318, 322, 372 S.E.2d 517, 519 (1988) (citation omitted). Moreover, “a defendant

 may not assert on appeal a new theory for suppression which was not asserted at

 trial.” State v. Smarr, 146 N.C. App. 44, 56, 551 S.E.2d 881, 88 (2001) (concluding

 the defendant’s “fruit of the poisonous tree” argument on appeal, based on a lack of

 Miranda warnings, should not be considered where the defendant argued his

 admission was inadmissible because it was not knowing and voluntary or that the

 testimony regarding the admission was not the best evidence at trial).

¶ 12 Where a defendant does not argue a constitutional theory at trial and later

 argues a constitutional theory on appeal, or a defendant argues one constitutional

 theory at trial and a different constitutional theory on appeal, the defendant may be
 STATE V. JOHNSON

 2021-NCCOA-501

 Opinion of the Court

 deemed to have failed to preserve their appellate arguments under Rule 10(a)(1). See

 Benson, 323 N.C. at 322, 372 S.E.2d at 519; State v. Bursell, 372 N.C. 196, 200, 827

 S.E.2d 302, 305 (2019) (“The transcript from the sentencing hearing reveals that

 defendant did not clearly raise the constitutional issue of whether the lifetime SBM

 imposed on him constituted a reasonable search under the Fourth Amendment.

 Though defense counsel specifically objected to imposition of lifetime SBM, this

 objection questioned the sufficiency of the evidence supporting the SBM order.”);

 State v. McPhail, 329 N.C. 636, 640-41, 406 S.E.2d 591, 595 (1991) (“[T]he defendant

 objected on the ground that allowing his own expert to testify for the State would

 violate his due process rights under the fourteenth amendment. The trial court

 overruled that objection. On appeal, the defendant now contends for the first time

 that allowing his expert to be called and to testify as a witness for the State violated

 his sixth amendment right to effective assistance of counsel. Having failed to

 challenge the admission of the evidence in question on this ground during the trial,

 the defendant will not be allowed to do so for the first time on his appeal to this

 Court.”).

¶ 13 In this case, Defendant argued in his Motion to Suppress:

 10. The officer did not have the ability to clearly see whether or
 not the Defendant was wearing his seatbelt. Defendant
 maintains that he was wearing his seatbelt. The stop of the
 vehicle was without reasonable suspicion and was therefore
 unconstitutional.
 STATE V. JOHNSON

 2021-NCCOA-501

 Opinion of the Court

 11. Even if the Court determines that the stopping of the
 Defendant’s vehicle was lawful, the search of going through the
 Defendant’s pockets for a violation of a seatbelt was excessive,
 unconstitutional, and unlawful. . . .

 ....

 13. That the defendant’s person was unlawfully searched and
 property was seized by Officer Stone in violation of the Fourth
 Amendment to the United States Constitution and in violation of
 the North Carolina Constitution and that the recovery of items
 from the defendant’s person by an officer acting without a search
 warrant was as a result of an unconstitutional search and seizure.

¶ 14 Here, unlike in the cases cited above, Defendant did not argue the evidence

 was inadmissible based on one constitutional provision at trial and another provision

 on appeal. Defendant argued Lieutenant Stone did not have reasonable suspicion for

 the stop generally and that Defendant’s “person was unlawfully searched and

 property was seized by Officer Stone in violation of the Fourth Amendment[.]” Thus,

 Defendant argued Lieutenant Stone’s search violated Defendant’s right to be free

 from unreasonable search and seizure as protected by the Fourth Amendment. On

 appeal, Defendant continues to argue Lieutenant Stone’s search violated Defendant’s

 rights as protected by the Fourth Amendment, albeit on slightly different factual

 bases than Defendant argued to the trial court. Although Defendant now argues

 Lieutenant Stone strayed from the traffic stop’s mission and added measurable delay

 to the stop, thus rendering the search unlawful, Defendant has not changed his
 STATE V. JOHNSON

 2021-NCCOA-501

 Opinion of the Court

 underlying constitutional basis for suppression. See Smarr, 146 N.C. App. at 56, 551

 S.E.2d at 88. Consequently, Defendant preserved this issue for appeal.

¶ 15 Moreover, even if Defendant did not preserve this issue for appeal under Rule

 10(a)(1), Rule 2 of our Rules of Appellate Procedure affords this Court the discretion

 to waive Rule 10(a)(1)’s requirements to reach the merits of Defendant’s arguments.

 Rule 2 provides:

 To prevent manifest injustice to a party, or to expedite decision in
 the public interest, either court of the appellate division may,
 except as otherwise expressly provided by these rules, suspend or
 vary the requirements or provisions of any of these rules . . . upon
 application of a party or upon its own initiative[.]

 N.C.R. App. P. 2 (2021). In fact, recognizing he may have not preserved this issue on

 appeal, Defendant asks this Court, in the alternative, to exercise its discretion under

 Rule 2 to reach the merits of his argument.

¶ 16 “ ‘Rule 2 must be applied cautiously,’ and it may only be invoked ‘in exceptional

 circumstances.’ ” Bursell, 372 N.C. at 200, 827 S.E.2d at 305 (quoting State v. Hart,

 361 N.C. 309, 315, 644 S.E.2d 201, 205 (2007)). “A court should consider whether

 invoking Rule 2 is appropriate ‘in light of the specific circumstances of individual

 cases and parties, such as whether ‘substantial rights of an appellant are affected.’ ”

 Id. (quoting State v. Campbell, 369 N.C. 599, 603, 799 S.E.2d 600, 602 (2017) (citation

 and quotation marks omitted)). “As a result, a decision to invoke Rule 2 and suspend
 STATE V. JOHNSON

 2021-NCCOA-501

 Opinion of the Court

 the appellate rules is always a discretionary determination.” Id. at 201, 827 S.E.2d

 at 306 (citation and quotation marks omitted).

¶ 17 In this case, if Defendant failed to satisfy Rule 10(a)(1) to preserve his Fourth

 Amendment argument based on the facts argued on appeal, Defendant did raise

 directly related issues in his Motion to Suppress, which are necessarily intertwined

 with any analysis of the traffic stop under the Fourth Amendment. Unlike in other

 cases—including cases where this Court has chosen to exercise its discretion under

 Rule 2 and reach the merits of appellants’ unpreserved arguments—here,

 Defendant’s Motion did argue similar constitutional theories in the trial court. See

 State v. Hall, 134 N.C. App. 417, 424, 517 S.E.2d 907, 912 (1999) (reviewing the

 defendant’s in-court identification argument based on a theory not raised in the trial

 court); see also State v. Adams, 250 N.C. App. 664, 674, 794 S.E.2d 357, 364 (2016)

 (exercising discretion under Rule 2 to review the trial court’s denial of the defendant’s

 motion to suppress when the defendant did not object to the evidence at trial).

¶ 18 Moreover, our courts have “tended to invoke Rule 2 for the prevention of

 ‘manifest injustice’ in circumstances in which substantial rights of an appellant are

 affected.” Hart, 361 N.C. at 316, 644 S.E.2d at 205 (citation omitted). But, where

 “the result would be no different if we chose to invoke Rule 2 to suspend the rules[,]”

 there is likely no manifest injustice. State v. Patterson, 185 N.C. App. 67, 73, 648

 S.E.2d 250, 254 (2007) (declining to exercise Rule 2 discretion where the defendant’s
 STATE V. JOHNSON

 2021-NCCOA-501

 Opinion of the Court

 argument had no merit and reviewing the argument would not change the outcome

 of the case). Here, however, Defendant raises a meritorious argument on appeal—

 thus, declining to exercise our discretion to review Defendant’s argument would

 constitute manifest injustice where the State could not prove its case against

 Defendant without the challenged evidence. See State v. Mullinax, 180 N.C. App.

 439, 443, 637 S.E.2d 294, 297 (2006) (reviewing defendant’s assignment of error

 under Rule 2, in part, “[b]ecause of the potential impact on defendant’s sentence from

 an incorrect prior record level calculation”). Therefore, assuming Defendant has

 failed to preserve his argument under N.C.R. App. P. 10(a)(1), we exercise our Rule 2

 discretion to address the merits of Defendant’s argument.

 II. Consent

¶ 19 Defendant argues, even if he consented to Lieutenant Stone’s request for a full

 search, that consent was involuntary because the request and search was outside the

 traffic stop’s scope, added time to the stop, and was not supported by reasonable

 suspicion of any criminal activity beyond the seatbelt infraction.

¶ 20 “When reviewing a ruling on a motion to suppress, we analyze whether the

 trial court’s ‘underlying findings of fact are supported by competent evidence . . . and

 whether those factual findings in turn support the [trial court’s] ultimate conclusions

 of law.’ ” State v. Bullock, 370 N.C. 256, 258, 805 S.E.2d 671, 674 (2017) (quoting
 STATE V. JOHNSON

 2021-NCCOA-501

 Opinion of the Court

 State v. Cooke, 306 N.C. 132, 134, 291 S.E.2d 618, 619 (1982)) (alterations in original).

 Here, the trial court found and concluded:

 The officer stopped the defendant, told him he stopped him for a
 seatbelt violation, but was just giving him a warning. The court
 finds at that point, that the officer had reasonable suspicion to
 stop the vehicle because of his observations about the seatbelt. At
 that point, after asking -- after telling the defendant that he was
 just giving him a warning, the officer asked the defendant if there
 was anything illegal on his person. The defendant responded
 there was not. The officer asked, “can I search you?” The
 defendant gave consent to search. The officer conducted a search
 and found a package that he believed to be powder cocaine. The
 court finds that the officer asked for the defendant’s consent to
 search, and the defendant gave consent to search. However, the
 defendant indicates that the officer asked if he could pat him
 down. The court finds that if that were the situation, then when
 the officer did pat him down and felt an object in his pocket that
 was -- that was a knotted bag, that that would come under the
 plain [feel] exception, and he would have had -- the officer would
 have had probable cause to be able to retrieve that item. And so,
 either way the court does find that the officer’s actions were
 justified in this matter. So, therefore the motion to suppress is
 denied.

¶ 21 Even if Defendant had consented to a full search in this context2, such a

 Finding would not have supported the legal conclusion Defendant’s consent was

 voluntary as a matter of law. “The Fourth Amendment to the United States

 Constitution states that ‘[t]he right of the people to be secure . . . , against

 2 The trial court’s findings do not resolve the dispute over the scope of Defendant’s

 consent to be searched—that is, whether Defendant was consenting to be frisked for weapons
 or consenting to the full search of the interior of his pockets for contraband.
 STATE V. JOHNSON

 2021-NCCOA-501

 Opinion of the Court

 unreasonable searches and seizures, shall not be violated.’ ” Bullock, 370 N.C. at 257,

 805 S.E.2d at 673 (citing U.S. Const. amend. IV) (alterations in original). “ ‘A seizure

 that is justified solely by the interest in issuing a warning ticket to the driver can

 become unlawful if it is prolonged beyond the time reasonably required to complete

 that mission.’ ” State v. Williams, 366 N.C. 110, 116, 726 S.E.2d 161, 166 (2012)

 (quoting Illinois v. Caballes, 543 U.S. 405, 407, 160 L. Ed. 2d 842, 846 (2005)). “[T]o

 detain a driver beyond the scope of the traffic stop, the officer must have the driver’s

 consent or reasonable articulable suspicion that illegal activity is afoot. Id. (holding

 consent to search after the mission of the traffic stop was complete was voluntary)

 (citing Florida v. Royer, 460 U.S. 491, 497-98, 75 L. Ed. 2d 229, 236 (1983)). However,

 where “consent to search . . . was the product of an unconstitutional seizure,” it is

 involuntary. State v. Cottrell, 234 N.C. App. 736, 752, 760 S.E.2d 274, 285 (2014).

 Moreover, “[i]f the officer’s request for consent to search is unrelated to the initial

 purpose for the stop, then the request must be supported by reasonable articulable

 suspicion of additional criminal activity.” State v. Parker, 183 N.C. App. 1, 9, 644

 S.E.2d 235, 241-42 (2007) (citation omitted).

¶ 22 “ ‘Beyond determining whether to issue a traffic ticket, an officer’s mission

 includes ordinary inquiries incident to [the traffic] stop.’ ” Bullock, 370 N.C. at 257,

 805 S.E.2d at 673 (quoting Rodriguez v. United States, 575 U.S. 348, 355, 191 L. Ed.

 2d 492, 499 (2015) (citation and quotation marks omitted))(alterations in original).
 STATE V. JOHNSON

 2021-NCCOA-501

 Opinion of the Court

 “These inquiries include checking the driver’s license, determining whether there are

 outstanding warrants against the driver, and inspecting the automobile’s registration

 and proof of insurance.” Id. (citation and quotation marks omitted). “In addition, ‘an

 officer may need to take certain negligibly burdensome precautions in order to

 complete his mission safely[,]’ ” including conducting criminal history checks. Id. at

 258, 805 S.E.2d at 673-74 (citations omitted). Officer safety “stems from the mission

 of the traffic stop[;]” thus, “time devoted to officer safety is time that is reasonably

 required to complete that mission.” Id. at 262, 805 S.E.2d at 676. “On-scene

 investigation into other crimes, however, detours from that mission.” Rodriguez, 575

 U.S. at 356, 191 L. Ed. 2d at 500. Moreover, “traffic stops remain[ ] lawful only so

 long as [unrelated] inquiries do not measurably extend the duration of the stop.”

 Bullock, 370 N.C. at 262, 805 S.E.2d at 676 (alterations and emphasis in original)

 (citation and quotation marks omitted) (holding an officer’s frisk of the defendant, for

 safety reasons, lasting eight or nine seconds did not measurably extend the stop).

¶ 23 Here, Lieutenant Stone did not articulate any reasonable suspicion of other

 criminal activity to support his asking for Defendant’s consent to search. In fact,

 Lieutenant Stone stated he routinely asked for consent to a full search during traffic

 stops and taught other law enforcement officers to do the same. Thus, the pertinent

 inquiry is whether Lieutenant Stone’s asking Defendant for consent to search and

 the subsequent search measurably extended the stop’s duration rendering any
 STATE V. JOHNSON

 2021-NCCOA-501

 Opinion of the Court

 consent Defendant gave involuntary as a matter of law. This inquiry, in turn,

 depends on whether the search deviated from the traffic stop’s mission. Certainly, a

 full search of Defendant’s person for any illegal contraband was not related to the

 traffic stop based on a seatbelt infraction. However, officer safety is a part of every

 traffic stop’s mission. Bullock, 370 N.C. at 262, 805 S.E.2d at 676.

¶ 24 An officer is permitted to detain and individual when the officer has a

 reasonable suspicion criminal activity is afoot and may conduct an external frisk of

 the detained person if the officer has reason to believe the detainee is armed and

 potentially dangerous. See State v. Duncan, 272 N.C. App. 341, 347, 846 S.E.2d 315,

 320-21 (2020) (citing Minnesota v. Dickerson, 508 U.S. 366, 372-73 124 L. Ed. 2d 334,

 343-44 (1993)). Thus, it may have been reasonable for Lieutenant Stone to conduct

 an external frisk of Defendant for officer safety as a part of the traffic stop’s mission.

 Moreover, this traffic stop’s mission could have included a check for outstanding

 warrants and of Defendant’s license and registration. However, the length and scope

 of a full search, before any of those permissible checks were completed, measurably—

 and impermissibly—extended the traffic stop in this case.

¶ 25 Here, the video evidence shows approximately twenty-six seconds elapsed from

 the time Defendant appears to raise his arms and complies with the search and when

 Lieutenant Stone finished reaching into all Defendant’s pockets. Moreover, the video

 reflects Lieutenant Stone never conducted an external frisk and possibly missed
 STATE V. JOHNSON

 2021-NCCOA-501

 Opinion of the Court

 locations where Defendant could have concealed weapons instead focusing on the

 content of Defendant’s pockets. Lieutenant Stone not conducting such a frisk belies

 his stated concern for his safety. Thus, although “a frisk that lasts just a few

 seconds[,]” and is conducted to enhance officer safety may not measurably extend a

 traffic stop, Bullock, 370 N.C. at 262-63, 805 S.E.2d at 677, the full search in this case

 lasting almost thirty seconds, and arguably not related to officer safety, did

 measurably extend the stop in this case. See Duncan, 272 N.C. App. at 353-54, 846

 S.E.2d at 325 (a thirty-four-second “search into Defendant’s jacket pockets had

 nothing to do with the ‘mission’ of the traffic stop” and measurably prolonged the

 stop).

¶ 26 Indeed, the State makes no argument that—absent Defendant’s alleged

 consent—the search in this case would have been permissible under the Fourth

 Amendment. Rather, the State contends Lieutenant Stone’s act of requesting consent

 to search did not measurably extend the traffic stop. However, as stated above,

 “[w]ithout additional reasonable articulable suspicion of additional criminal activity,

 the officer’s request for consent exceeds the scope of the traffic stop and the prolonged

 detention violates the Fourth Amendment.” Parker, 183 N.C. App. at 9, 644 S.E.2d

 at 242 (citation omitted).

¶ 27 Nevertheless, the State argues our decision in State v. Jacobs supports the

 State’s position law enforcement officers need no additional, reasonable suspicion to
 STATE V. JOHNSON

 2021-NCCOA-501

 Opinion of the Court

 request consent to search defendants during a valid traffic stop.3 162 N.C. App. 251,

 590 S.E.2d 437 (2004). In Jacobs, the defendant pled guilty to drug charges after the

 trial court denied the defendant’s motion to suppress evidence of drug possession law

 enforcement found after stopping the defendant’s car and asking defendant for

 consent to search the car. Id. at 252, 590 S.E.2d 439. An officer with the Burlington

 Police Department stopped the defendant’s car at approximately 1:43 a.m. because

 the officer saw the defendant’s car “continuously weaving back and forth in its lane[.]”

 Id. Beyond the defendant’s “weaving,” the defendant’s car also had a Tennessee

 license plate; the officer had recently been alerted that a murder suspect from

 Tennessee was in Burlington. Id.

¶ 28 After the officer stopped the defendant’s car, the officer “ordered [the]

 defendant out of the car and conducted a pat-down search to ensure [the] defendant

 was not armed.” Id. The defendant’s car was registered to a man with a different

 last name than the defendant, and the defendant stated the car was the defendant’s

 brother’s car, although he could not explain why the two had different last names.

 Id. at 252-53, 590 S.E.2d at 439. According to the officer, the defendant “appeared to

 be nervous[.]” Id. at 253, 590 S.E.2d at 439. The officer then told the defendant the

 3 The State makes this argument in opposing Defendant’s argument the request for

 consent violated Art. I § 20 of the North Carolina Constitution. We address whether State v.
 Jacobs supports the State’s position on Fourth Amendment grounds and do not address
 whether the request for consent in this case violated the North Carolina Constitution.
 STATE V. JOHNSON

 2021-NCCOA-501

 Opinion of the Court

 officer “had information regarding the transport of drugs” between Tennessee and

 Burlington. Id. The officer asked the defendant if the defendant had any drugs in

 his car; the defendant replied he did not. Id. The officer asked the defendant for

 consent to search the car, and the defendant consented and told the officer there was

 a large amount of cash in the car “from the sale of a motorcycle.” Id. As the officer

 searched the car, he smelled marijuana; the defendant admitted someone had smoked

 marijuana in the vehicle earlier. Id. at 253, 590 S.E.2d at 440. The officer found “a

 bundle of bills in a rubber band” and loose tobacco the officer believed came from

 hollowed-out cigars used to smoke marijuana. Id. The officer searched the

 defendant’s person, including the defendant’s “crotch,” where the officer found plastic

 bags containing what the officer believed were methylenedioxymethamphetamine

 (MDMA) and marijuana. Id. at 253-54, 590 S.E.2d at 440.

¶ 29 On appeal, the defendant argued the trial court erred in denying his motion to

 suppress where, according to the defendant, the officer did not have reasonable

 suspicion for the stop, and the search of his car was unlawful, despite his consent,

 because “the length of the investigatory detention was unreasonable.” Id. at 254-56,

 590 S.E.2d 440-41. First, we held the trial court did not err in concluding the officer

 had reasonable suspicion to stop the defendant because the officer observed the

 defendant “weaving” in his lane giving rise to reasonable suspicion of impaired

 driving. Id. at 255-56, 590 S.E.2d at 440-41. Further, we held the officer had reason
 STATE V. JOHNSON

 2021-NCCOA-501

 Opinion of the Court

 to detain the defendant and ask him questions in order to dispel or confirm his

 suspicions about the Tennessee murder suspect and that the defendant’s inability to

 answer the officer’s questions and the defendant’s nervousness gave rise to additional

 suspicion. Id. at 256-57, 590 S.E.2d at 441-42.

¶ 30 In the alternative, the defendant argued the State “failed to establish that [the

 officer] had sufficient reasonable suspicion to request defendant’s consent for the

 search.” Id. at 258, 590 S.E.2d at 442. We concluded “[n]o such showing is required.”

 Id. We reasoned: “[w]hen a defendant’s detention is lawful, the State need only show

 ‘that defendant’s consent to the search was freely given, and was not the product of

 coercion’ . . . .” Id. (quoting State v. Sanchez, 147 N.C. App. 619, 626, 556 S.E.2d 602,

 608 (2001) disc. rev. denied, 355 N.C. 220, 560 S.E.2d 358 (2002) (citation omitted)).

 Thus, we held the search of the defendant’s car was lawful “[s]ince the search of

 defendant’s car was admittedly consensual and was not tainted by an unlawful

 detention.” Id. at 258, 590 S.E.2d at 443 (emphasis added).

¶ 31 However, Jacobs is inapposite here. In Jacobs, we held the defendant was

 already lawfully detained on suspicion of impaired driving. Thus, the officer in

 Jacobs already had reasonable suspicion to support a search for intoxicants in the

 defendant’s vehicle. Therefore, the request for consent to search did not constitute

 further, unlawful detention because the officer had reason to believe evidence of

 impairment could be present, and the defendant’s nervousness and inability to
 STATE V. JOHNSON

 2021-NCCOA-501

 Opinion of the Court

 answer questions added to the officer’s suspicions. Here, unlike the officer in Jacobs,

 Lieutenant Stone had no reasonable suspicion of criminal activity unrelated to the

 initial reason for the traffic stop. Without any additional reasonable suspicion of

 unrelated criminal activity, Lieutenant Stone’s request for consent for a full search

 unreasonably delayed the stop and tainted the consent Defendant gave. See id.; see

 also Parker, 183 N.C. App. at 9, 644 S.E.2d at 242. Therefore, Lieutenant Stone had

 not lawfully detained Defendant such that the State only had to show Defendant’s

 consent was freely given and not the product of coercion. See Jacobs, 162 N.C. App.

 at 258, 590 S.E.2d at 442.

¶ 32 The State further argues our decision in Parker—restating the general

 proposition that a request for consent unrelated to the reason for the initial stop must

 be supported by reasonable suspicion of additional, criminal activity—“does not

 survive” our Supreme Court’s decision in Bullock. In Parker, however, we in fact held

 law enforcement’s request for consent to search was supported by probable cause

 where, during a valid “weapons frisk” of the vehicle just prior to the request for

 consent to search the defendant’s purse, law enforcement found other drugs and drug

 paraphernalia creating at least reasonable suspicion of further criminal activity

 unrelated to defendant’s speeding that caused law enforcement to stop the

 defendant’s vehicle in the first instance. Parker, 183 N.C. App. at 11-13, 644 S.E.2d

 at 243-44. In this case, based on Lieutenant Stone’s own testimony, he had no
 STATE V. JOHNSON

 2021-NCCOA-501

 Opinion of the Court

 reasonable, articulable suspicion of any further criminal activity that would support

 his request for consent for a full search of Defendant’s person.

¶ 33 Moreover, our decision in Parker was left undisturbed by Bullock as Bullock

 was focused on how a frisk was related to the mission of the traffic stop generally.

 See generally Bullock, 370 N.C. 256, 805 S.E.2d 671. Indeed, the Bullock Court

 acknowledged: “Safety precautions taken to facilitate investigations into crimes that

 are unrelated to the reasons for which a driver has been stopped, however, are not

 permitted if they extend the duration of the stop.” Id. at 258, 805 S.E.2d at 674.

 Here, the request to search and the full search of Defendant in this case was not

 related to the mission of the stop and wholly unsupported by any reasonable,

 articulable suspicion of other criminal activity afoot beyond the seatbelt infraction for

 which Lieutenant Stone initially stopped Defendant. Thus, because Lieutenant

 Stone’s request for consent and his subsequent search of Defendant measurably

 prolonged the traffic stop for reasons unrelated to the stop’s mission without

 reasonable suspicion, any consent Defendant gave for this full search was involuntary

 as a matter of law. Therefore, the trial court erred in denying Defendant’s Motion to

 Suppress the cocaine found as a result of this unreasonable search.4 Consequently,

 4 Alternatively, the trial court found Lieutenant Stone’s “actions were justified” under

 the “plain feel exception.” The trial court’s Finding/Conclusion the evidence in this case
 would have been admitted under the plain feel exception is not supported by the Record. The
 STATE V. JOHNSON

 2021-NCCOA-501

 Opinion of the Court

 we reverse the trial court’s denial of Defendant’s Motion to Suppress. Moreover, we

 vacate the Judgment entered against Defendant based on his guilty pleas—entered

 subject to this appeal—to the charges of Felony Possession of Cocaine and the

 concomitant charge of attaining Habitual-Felon Status. We remand this matter to

 the trial court for further proceedings, including a determination of whether there is

 evidence to support the charges against Defendant or if these matters should be

 dismissed.

 Conclusion

¶ 34 Accordingly, for the foregoing reasons, we reverse the trial court’s denial of

 Defendant’s Motion to Suppress, vacate the Judgment, and remand this matter for

 further proceedings.

 VACATED AND REMANDED.

 plain feel exception applies “to cases in which an officer discovers contraband through the
 sense of touch during an otherwise lawful search.” Minnesota v. Dickerson, 508 U.S. 366,
 375; 124 L. Ed. 2d 334, 345 (1993). However, as explained above, the search in this case was
 not a lawful search. Moreover, even if the trial court assumed Lieutenant Stone would have
 immediately recognized the contraband during an external frisk, nothing in the Record
 supports such an assumption. Lieutenant Stone did not know there was anything in
 Defendant’s pockets until he reached inside them. As such, the plain feel exception does not
 apply in this case. See State v. Beveridge, 112 N.C. App. 688, 696, 436 S.E.2d 912, 916 (1993),
 aff’d per curiam, 336 N.C. 601, 444 S.E.2d 223 (1994) (declining to apply the plain feel
 exception where the officer conducted an external frisk and then exceeded the scope of that
 permissible frisk by asking the defendant to empty the contents of his pockets and where the
 officer’s testimony did not establish the object was immediately recognizable as contraband
 during the frisk).
 STATE V. JOHNSON

 2021-NCCOA-501

 Opinion of the Court

Judge CARPENTER concurs in a separate opinion.

Judge GRIFFIN concurs in a separate opinion.
 No. 20-564 – State v. Johnson

 CARPENTER, Judge, concurring.

¶ 35 I concur with the reasoning and the outcome that the application of the

 Constitutional protections to this case requires. I join the narrow analysis of the

 dispositive constitutional issue in this case set forth by Judge Griffin in his

 concurrence. I write separately to highlight that the legality of the stop of Appellant’s

 vehicle was not challenged on appeal and there is no indication in the record in this

 case that racially disparate treatment was at issue.

¶ 36 Choosing to inject arguments of disparate treatment due to race into matters

 before the Court where such treatment is not at issue and does not further the goal

 of the equal application of the law to everyone. Rather, such a discussion functions

 to overshadow the other important constitutional issues of this case, and is not

 helpful to maintaining public confidence in the judiciary or the practice of law

 generally.
 No. COA20-564 – State v. Johnson

 GRIFFIN, Judge, concurring.

¶ 37 I concur with the reasoning in the majority opinion. I write separately to

 indicate exactly where Lieutenant Stone violated the Fourth Amendment to the U.S.

 Constitution. The Defendant’s brief also raises a question of impartiality in traffic

 stops, and our justice system generally, based on the color of a person’s skin and their

 gender. This appeal to an emotion, and to nothing before us in the Record, must be

 addressed, as the law applies equally to everyone. This case presents a very specific

 set of facts to guide our analysis. The stop of Defendant’s vehicle was supported by

 reasonable suspicion. “[R]easonable suspicion is the necessary standard for traffic

 stops[.]” State v. Styles, 362 N.C. 412, 415, 665 S.E.2d 438, 440 (2008) (citation

 omitted). Lieutenant Stone plainly articulated that he observed Defendant driving

 the vehicle without wearing a seatbelt. Defendant does not challenge on appeal the

 validity of the initial traffic stop.

¶ 38 Lieutenant Stone could and did lawfully ask Defendant to get out of the vehicle

 for safety reasons.

 [A] police officer may as a matter of course order the driver
 of a lawfully stopped car to exit his vehicle. . . . Asking a
 stopped driver to step out of his or her car improves an
 officer’s ability to observe the driver’s movements and is
 justified by officer safety, which is a legitimate and weighty
 concern.

 State v. Bullock, 370 N.C. 256, 261-62, 805 S.E.2d 671, 676 (2017) (citations and

 internal quotation marks omitted). A traffic stop is anything but routine and can
 STATE V. JOHNSON

 2021-NCCOA-501

 GRIFFIN, J., concurring

 present any number of challenges to an officer and the individual stopped. An officer

 is authorized to take many investigatory and safety-related measures. Additionally,

 Lieutenant Stone could have checked for outstanding warrants, checked Defendant’s

 driver’s license, and inspected the vehicle registration. Id. at 257, 805 S.E.2d at 673.

 An officer can, and should, take officer safety into account during a traffic stop. Id.

 at 258, 805 S.E.2d at 674.

¶ 39 The issue in this case arises when Lieutenant Stone asks to search Defendant

 with no additional reasonable suspicion of other criminal activity. The only violation

 evident from the Record is the seatbelt violation. Here, Lieutenant Stone’s testimony

 was clear that his intent was to search Defendant. The evidence in the Record

 supports this. The video of the interaction between Lieutenant Stone and Defendant

 cuts against an assertion that the search was for officer safety. Further, the trial

 court made no findings regarding officer safety concerns. The search was

 administered only in the pockets of Defendant. There was no pat down frisk.

 Lieutenant Stone reached directly into Defendant’s pockets and did not search other

 areas of Defendant’s person where weapons could be hidden. The evidence here does

 not indicate that the search was motivated by a concern for officer safety. Lieutenant

 Stone even stated that he asked to search “every single person that I stop” and that

 for years he had been training new deputies to “ask to search” people that they stop.

 An officer can certainly ask for consent to search an individual after a lawful
 STATE V. JOHNSON

 2021-NCCOA-501

 GRIFFIN, J., concurring

 detention. However, under this specific set of facts, this search prolonged the mission

 of the stop in violation of the Fourth Amendment. See Rodriguez v. United States,

 575 U.S. 348, 355 (2015) (holding a traffic stop “remains lawful only so long as

 [unrelated] inquiries do not measurably extend the duration of the stop” (alteration

 in original) (citation and internal quotation marks omitted)). Lieutenant Stone

 articulated no additional reasonable suspicion of criminal activity for asking to search

 Defendant, thereby illegally delaying the stop. See id. (stating an officer “may not

 [conduct unrelated checks] in a way that prolongs the stop, absent the reasonable

 suspicion ordinarily demanded to justify detaining an individual” (citation omitted)).

¶ 40 The analysis here does not limit or question the officer’s ability to take safety

 precautions as articulated in Bullock. It also does nothing to limit a search pursuant

 to consent. If Lieutenant Stone had reasonable articulable suspicion of other criminal

 activity or had received valid consent for an additional search, the additional search

 would not have violated the Fourth Amendment by extending the encounter. See

 State v. Reed, 373 N.C. 498, 510, 838 S.E.2d 414, 423 (2020) (stating that

 “prolong[ing] a detention beyond the scope of a routine traffic stop requires . . . either

 the driver’s consent or a reasonable suspicion that illegal activity is afoot” (citation

 and internal quotation marks omitted)).

¶ 41 Defendant’s brief implies that U.S. citizens are treated differently under our

 laws based on the color of their skin. I reject this argument. The law is color blind
 STATE V. JOHNSON

 2021-NCCOA-501

 GRIFFIN, J., concurring

 and applies equally to every citizen in the United States of America. This argument

 in Defendant’s brief is inflammatory and unnecessary.

¶ 42 It is hard to blame Defendant for raising this argument. The brief quoted

 former North Carolina Chief Justice Beasley, who also implied in a speech on 2 June

 2020 that our justice system does not treat people equally in the courtroom based on

 the color of their skin:

 These protests highlight the disparities and injustice that
 continue to plague black communities. Disparities that
 exist as the result of policies and institutions; racism and
 prejudice have remained stubbornly fixed and resistant to
 change. These protests are a resounding, national chorus
 of voices whose lived experiences reinforce the notion that
 Black people are ostracized, cast out, and dehumanized.
 Communities are crying out for justice and demanding
 real, meaningful change.
 ...
 As the mother of twin sons who are young black men, I
 know that the calls for change absolutely must be heeded.
 And while we rely on our political leaders to institute those
 necessary changes, we must also acknowledge the distinct
 role that our courts play. As Chief Justice, it is my
 responsibility to take ownership of the way our courts
 administer justice, and acknowledge that we must do
 better, we must be better.

 When Chief Justice Martin convened a commission to
 study the justice system in 2015, that commission found
 that a majority of North Carolinians lack trust and
 confidence in our court system. Too many people believe
 that there are two kinds of justice. They believe it because
 that is their lived experience -- they have seen and felt the
 difference in their own lives.
 STATE V. JOHNSON

 2021-NCCOA-501

 GRIFFIN, J., concurring

 The data also overwhelmingly bears out the truth of those
 lived experiences. In our courts, African-Americans are
 more harshly treated, more severely punished and more
 likely to be presumed guilty. There are many ways to
 create change in the world, but one thing is apparent: the
 young people who are protesting everyday have made clear
 that they do not intend to live in a world in which they are
 denied justice and equality like the generations before
 them.

 We must develop a plan for accountability in our courts.
 Judges work hard and are committed to serving the public.
 But even the best judges must be trained to recognize our
 own biases. We have to be experts not just in the law, but
 in equity, equity that recognizes the difficult truths about
 our shared past. We must openly acknowledge the
 disparities that exist and are too often perpetuated by our
 justice system.
 ...
 Our pilot projects in eight North Carolina counties are
 already showing promising results that can be
 implemented statewide to truly bring change to a system
 that all too frequently punishes people disparately.

 Cheri Beasley, Chief Justice Beasley Addresses the Intersection of Justice and Protests

 around the State, North Carolina Judicial Branch (June 2, 2020),

 https://www.nccourts.gov/news/tag/press-release/chief-justice-beasley-addresses-the-

 intersection-of-justice-and-protests-around-the-state.

¶ 43 This statement from the former Chief Justice has motivated Defendant in this

 case to assert that “[o]ur Constitution gives this Court the legal authority to carry out

 our Chief Justice’s pledge.” Defendant’s statement highlights the problem with the

 judiciary becoming involved in public policy. The speech by the former Chief Justice
 STATE V. JOHNSON

 2021-NCCOA-501

 GRIFFIN, J., concurring

 states our justice system does not treat people equally based on the color of their skin.

 It also encourages and charges the courts to become an active body by involving our

 judicial branch in policy decisions. The judiciary should at all times practice judicial

 restraint. Here, this Court reaches the correct legal outcome regardless of the color

 of Defendant.

¶ 44 We are fortunate to live in the United States of America where the law is

 applied the same to all citizens.